*EXECUTION*

TRUMAN 2016 SC6, LLC,
as Depositor,

TRUMAN CAPITAL ADVISORS, LP,
as Program Manager,

U.S. BANK NATIONAL ASSOCIATION,
not in its individual capacity, but solely as Legal Title Trustee,

and

U.S. BANK NATIONAL ASSOCIATION,
as Participation Agent

---

TRUST AGREEMENT

Dated as of June 24, 2016

---

TRUMAN 2016 SC6 TITLE TRUST

" Exhibit A "

<u>TABLE OF CONTENTS</u>

Page

ARTICLE I      DEFINITIONS.................................................................. 1

Section 1.01      Definitions..................................................................... 1

ARTICLE II      DECLARATION OF TRUST .......................................... 7

Section 2.01      Creation and Declaration of Trust; Acceptance and Acknowledgment by Legal Title Trustee ............................ 7
Section 2.02      Initial Section 404 Notices........................................... 8
Section 2.03      Transfers of Mortgage Assets ...................................... 9
Section 2.04      Granting Clause ........................................................ 9
Section 2.05      Liability of the Depositor and Program Manager.............. 9
Section 2.06      Representations, Warranties and Covenants of the Depositor.......... 11

ARTICLE III      PARTICIPATION AGREEMENT MATTERS ................ 11

Section 3.01      Participation Agreement ............................................ 11

ARTICLE IV      CONCERNING THE LEGAL TITLE TRUSTEE........... 11

Section 4.01      Duties of Legal Title Trustee .................................... 11
Section 4.02      Action Upon Instruction ........................................... 13
Section 4.03      Certain Matters Affecting the Legal Title Trustee............ 14
Section 4.04      Legal Title Trustee's Disclaimer ............................... 14
Section 4.05      Compensation, Expenses and Indemnity ....................... 15
Section 4.06      Replacement of Legal Title Trustee............................ 15
Section 4.07      Successor Legal Title Trustee by Merger ...................... 16
Section 4.08      Appointment of Co-Trustee, Separate Trustee ............... 16
Section 4.09      Eligibility; Disqualification ...................................... 18
Section 4.10      Representations and Warranties of the Legal Title Trustee.............. 18

ARTICLE V      PURCHASE OF THE TRUST FUND AND TERMINATION OF THIS AGREEMENT ........................................... 19

Section 5.01      Termination of Trust Agreement Upon Repurchase or Liquidation of All Mortgage Loans .................................. 19
Section 5.02      Procedure Upon Termination of Trust Agreement ........... 19

ARTICLE VI      RIGHTS OF THE BENEFICIARY AND THE PARTICIPATION AGENT....................................... 20

Section 6.01      Limitation on Rights of Beneficiary ............................ 20
Section 6.02      Acts of the Participation Agent................................... 20

ARTICLE VII      MORTGAGE ASSET DOCUMENTS.......................... 21

TABLE OF CONTENTS
(continued)

Page

Section 7.01    Custodian To Retain Possession of Certain Documents ................... 21
Section 7.02    Release of Asset Files ....................................................................... 21
Section 7.03    Mortgage Loan Purchase Agreements and Interim Servicing
                Agreements ........................................................................................ 22

ARTICLE VIII    TAX ADMINISTRATION ................................................................ 22

Section 8.01    Tax Administration ........................................................................... 22

ARTICLE IX     MISCELLANEOUS PROVISIONS .................................................. 22

Section 9.01    Binding Nature of Agreement; Assignment ...................................... 22
Section 9.02    Merger and Integration ..................................................................... 22
Section 9.03    Amendment ....................................................................................... 22
Section 9.04    Governing Law; Consent To Jurisdiction; Waiver Of Jury Trial ...... 23
Section 9.05    Notices .............................................................................................. 24
Section 9.06    Severability of Provisions ................................................................. 25
Section 9.07    Indulgences; No Waivers .................................................................. 25
Section 9.08    Headings ........................................................................................... 25
Section 9.09    Beneficiaries ..................................................................................... 25
Section 9.10    Counterparts ...................................................................................... 26
Section 9.11    Confidentiality .................................................................................. 26
Section 9.12    No Petition ........................................................................................ 26

ATTACHMENTS

Exhibit A       Form of Section 404 Notice
Exhibit B       Form of Transfer Supplement

This TRUST AGREEMENT (as such may be amended or supplemented from time to time, the "Agreement") dated and effective as of June 24, 2016 (the "Effective Date"), is by and among TRUMAN 2016 SC6, LLC, as depositor (the "Depositor"), TRUMAN CAPITAL ADVISORS, LP, as program manager (the "Program Manager"), U.S. BANK NATIONAL ASSOCIATION, a national banking association, not in its individual capacity, but solely as legal title trustee (the "Legal Title Trustee") and U.S. BANK NATIONAL ASSOCIATION, as participation agent (in such capacity, the "Participation Agent").

PRELIMINARY STATEMENT

WHEREAS, the Depositor has acquired and will convey from time to time, on each applicable Transfer Date, the related Mortgage Assets identified on Schedule I to the related Transfer Supplement and certain other property;

WHEREAS, immediately prior to each such transfer the Depositor shall be the owner of the Mortgage Assets and the other property being conveyed by it to the Legal Title Trustee hereunder for inclusion in the Trust Fund;

WHEREAS, the Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance on each Transfer Date to the Legal Title Trustee of the Mortgage Assets and other property constituting the Trust Fund and creation of the Trust Fund; and

WHEREAS, the beneficiary of the Trust Fund created hereby (the "Beneficiary") shall be the Depositor;

NOW, THEREFORE, in consideration of the mutual agreements herein contained, the parties hereto hereby agree as follows:

ARTICLE I

DEFINITIONS

Section 1.01   Definitions.  Capitalized terms used in this Agreement, unless the context otherwise requires, shall have the meanings set forth below.

Adverse Claim:  Any claim of ownership or any lien, security interest, title retention, trust or other charge or encumbrance, or other type of preferential arrangement having the effect or purpose of creating a lien or security interest, other than any security interest created under this Agreement.

Affiliate:  With respect to any Person, any other Person directly or indirectly controlling, controlled by, or under direct or indirect common control with such specified Person.  For purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Agreement:  This Trust Agreement and all amendments and supplements hereto.

Asset File:  With respect to a Mortgage Asset, the related Mortgage File or REO File, as applicable.

Asset Schedule:  The list of Mortgage Assets, legal title to which is to be acquired by the Legal Title Trustee and included in the Trust Fund (but which Mortgage Assets are subject to the rights of the related Participants under the Participation Agreement), attached to the related Transfer Supplement as Schedule I thereto (as such schedule may be amended or supplemented from time to time or in such other form as shall be acceptable to the parties hereto), in each case containing, with respect to each Mortgage Asset, the information identified in the definition of "Asset Schedule" in the Participation Agreement.

Assignment:  With respect to any Mortgage Loan, an assignment of the Mortgage, notice of transfer or equivalent instrument sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the transfer of such Mortgage.

Authorized Officer:  With respect to any corporation or limited liability company, the chairman of the board, the president, any vice president, the secretary, the treasurer, any assistant secretary, any assistant treasurer and each other officer of such corporation or the members and manager of such limited liability company specifically authorized in resolutions of the Board of Directors of such corporation or members or managers authorized in the operating agreement of such limited liability company to sign agreements, instruments or other documents in connection with this Agreement on behalf of such corporation or limited liability company, as the case may be.  With respect to any trust, any designated officer of such trust, the corporate trustee or any individual co-trustee.

Beneficiary:  As defined in the Preliminary Statement hereto.

Business Day:  Any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Minnesota or New York (or such other states in which the principal offices of the Legal Title Trustee are subsequently located, as specified in writing by such party to the other parties hereto) are required, or authorized by law, to close.

Code:  The Internal Revenue Code of 1986, as amended, and as it may be further amended from time to time, any successor statutes thereto, and applicable U.S. Department of Treasury regulations issued pursuant thereto in temporary or final form.

Cooperative Corporation:  The entity that holds title (fee or an acceptable leasehold estate) to the real property and improvements constituting the Cooperative Property and which governs the Cooperative Property, which Cooperative Corporation must qualify as a Cooperative Housing Corporation under Section 216 of the Code.

Cooperative Loan:  Any Mortgage Loan secured by Cooperative Shares and a Proprietary Lease.

Cooperative Property: The real property and improvements owned by a Cooperative Corporation, including the allocation of individual dwelling units to the holders of the shares of the Cooperative Corporation.

Cooperative Shares: Shares issued by a Cooperative Corporation.

Custodial Agreement: The custodial agreement to be dated as of June 24, 2016, among JPMorgan Chase Bank, National Association, as buyer, Truman 2016 SC6 ML, LLC and Truman 2016 SC6 REO, LLC, as sellers, the Legal Title Trustee and the Custodian, as such may be amended by the parties thereto from time to time.

Custodian: U.S. Bank National Association, a national banking association, not in its individual capacity but solely as Custodian, any successor in interest, or any successor custodian appointed under the Custodial Agreement.

Cut-off Date: With respect to a Mortgage Asset, the date specified in the related Transfer Supplement.

Depositor: Truman 2016 SC6, LLC, and its successors and assigns, or any successor to the Depositor under this Agreement.

Effective Date: As defined in the recitals hereto.

Governmental Authority: The United States of America, any state, local or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions thereof or pertaining thereto.

Helping Families Act: The Helping Families Save Their Homes Act of 2009 (P.L. 111-22, 123 Stat. 1632), as the same may be amended from time to time.

Interim Servicer: With respect to a Mortgage Asset, the Interim Servicer, if any, specified on the related Transfer Supplement, and any successor in interest or assign.

Interim Servicer Reporting Date: With respect to any Interim Servicing Agreement, the "Interim Servicer Reporting Date" (if any) specified on the related Transfer Supplement.

Interim Servicing Agreement: With respect to a Mortgage Asset, the "Interim Servicing Agreement" (if any) specified on the related Transfer Supplement.

Interim Servicing Period: With respect to a Mortgage Asset, the "Interim Servicing Period" (if any) specified on the related Transfer Supplement.

Legal Title Basic Documents: This Agreement, each Transfer Supplement, the Participation Agreement (including any related documents), the Servicing Agreement (including any related documents), the Custodial Agreement (including any related documents), each Mortgage Loan Purchase Agreement and each Interim Servicing Agreement.

Legal Title Trustee: U.S. Bank National Association, not in its individual capacity but solely as legal title trustee of Truman 2016 SC6 Title Trust, or any successor in interest, or if any successor legal title trustee shall be appointed as herein provided, then such successor trustee.

Loan Collateral: With respect to any Mortgage Loan, the related Mortgaged Property and any personal property securing such Mortgage Loan, including any lessor's interest in such property, whether characterized or recharacterized as an ownership or security interest, and including any accounts or deposits pledged to secure such Mortgage Loan.

Mortgage: The written instrument creating a valid lien on a Mortgaged Property, which instrument may be in the form of a mortgage, deed of trust, deed to secure debt, security deed, certificate of title or other instrument creating a lien on or interest in the Loan Collateral.

Mortgage Asset: Each Mortgage Loan and REO Property owned by the Legal Title Trustee for the benefit of the Beneficiary and the related Participant.

Mortgage File: As defined in the Custodial Agreement.

Mortgage Loan:

(a)    a fixed or adjustable rate, closed-end (which term includes a revolving line of credit under which no additional amounts may be drawn) mortgage loan and promissory note, including the right to payment of any interest or finance charges and other obligations of the Mortgagor with respect thereto, listed on the Asset Schedule, legal title to which is included as part of the Trust Fund;

(b)    all security interests or liens and any real and personal property subject thereto from time to time purporting to secure payment by the related Mortgagor;

(c)    all guarantees, indemnities and warranties and any proceeds thereof, proceeds of insurance policies, Uniform Commercial Code financing statements, certificates of title or other title documentation and other agreements or arrangements of whatever character from time to time supporting or securing payment of such mortgage loan;

(d)    all collections with respect to any of the foregoing;

(e)    all Records with respect to any of the foregoing; and

(f)    all proceeds of any of the foregoing.

Mortgage Loan Purchase Agreement: With respect to a Mortgage Asset, the purchase or sale agreement pursuant to which the Depositor acquired such Mortgage Asset from the related Transferor and specified as "Mortgage Loan Purchase Agreement" on the related Transfer Supplement.

Mortgage Note: The original executed promissory note evidencing the indebtedness of a Mortgagor under a Mortgage Loan or if such Mortgage is not evidenced by a promissory note,

the original executed document or other instrument primarily evidencing the indebtedness of the Mortgagor under such Mortgage Loan.

Mortgaged Property:  Any of (x) the fee simple interest in real property, together with improvements thereto and any fixtures, leases and other real or personal property securing the related Mortgage Note, or (y) in the case of a Cooperative Loan, the related Cooperative Shares and Proprietary Lease, securing the indebtedness of the Mortgagor under the related Mortgage Loan.

Mortgagor:  With respect to any Mortgage Loan, the Person or Persons primarily obligated under the related Mortgage Note.

Officer's Certificate:  With respect to any Person, a certificate signed by an Authorized Officer of such Person or, in the case of a Servicer, by a Servicing Officer, and in each case delivered to the Legal Title Trustee.

Opinion of Counsel:  A written opinion of counsel, reasonably acceptable in form and substance to the Legal Title Trustee, and who may be in-house or outside counsel to the Depositor, the Program Manager, the Participation Agent or a Servicer, but which must be independent outside counsel with respect to any such opinion of counsel concerning matters with respect to the Code.  Any Opinion of Counsel shall not be at the expense of the Legal Title Trustee.

Outstanding Amount:  With respect to any Mortgage Loan and any date of determination, the outstanding principal balance of such Mortgage Loan.  With respect to any REO Property and any date of determination, the outstanding principal balance of the related mortgage loan at the time such mortgage loan became an REO Property.

Participant:  As defined in the Participation Agreement.

Participation Agent:  As defined in the Participation Agreement.

Participation Agreement:  That certain master participation agreement to be dated as of June 24, 2016, among the Legal Title Trustee for the Trust, the Depositor, the Program Manager, and the Participation Agent, as such may be amended by the parties thereto from time to time.

Participation Interest:  As defined in the Participation Agreement.

Participation Interest Account:  As defined in the Participation Agreement.

Person:  An individual, partnership, corporation (including a statutory trust), unincorporated organization, joint stock company, limited liability company, trust, association, joint venture, Governmental Authority or any other entity of whatever nature.

Program Manager:  Truman Capital Advisors, LP, or any successor in interest.

Proprietary Lease:  With respect to any Cooperative Property, a lease or occupancy agreement between a Cooperative Corporation and a holder of related Cooperative Shares.

Purchase Price:  With respect to any Mortgage Asset that is transferred to the Legal Title Trustee pursuant to the related Transfer Supplement, the price paid for such Mortgage Asset pursuant to such transfer or sale.

Recognition Agreement: With respect to any Cooperative Loan, an agreement between the related Cooperative Corporation and the originator of such Mortgage Loan to establish the rights of such originator in the related Cooperative Property.

Records:  With respect to the Mortgage Assets and the related Mortgagors, all documents, books, records and other information (including, without limitation, computer programs, tapes, disks, punch cards, data processing software and related property and rights) prepared and maintained by any Servicer on behalf of the Legal Title Trustee.

REO File:  As defined in the Custodial Agreement.

REO Property:  Either (i) Loan Collateral acquired by the Legal Title Trustee, or by any Servicer (or agent or nominee thereof) on behalf of the Legal Title Trustee, through foreclosure or deed-in-lieu of foreclosure or otherwise in connection with a defaulted Mortgage Loan or (ii) mortgage loan collateral acquired by the Legal Title Trustee for the Trust Fund for the benefit of the Beneficiary and the related Participants or by the related Transferor through foreclosure or deed-in-lieu of foreclosure or otherwise in connection with a defaulted mortgage loan prior to the transfer of such property to the Legal Title Trustee.

Responsible Officer:  Any vice president, any assistant vice president, any secretary, any assistant secretary, any treasurer, any assistant treasurer, any corporate trust officer or any other officer of the Legal Title Trustee customarily performing functions similar to those performed by any of the above-designated officers and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge or and familiarity with the particular subject, in each case having direct responsibility for the administration of this Agreement.

Security Agreement:  With respect to any Cooperative Loan, the agreement between the owner of the related Cooperative Shares and the originator of the related Mortgage Loan that defines the terms of the security interest in such Cooperative Shares and the related Proprietary Lease, as such may be amended by the parties thereto from time to time.

Section 404 Notice:  The notice required under Section 404 of the Helping Families Act.

Servicer:  With respect to a Mortgage Asset, the servicer specified on related Transfer Supplement and any successor in interest or assign.

Servicing Agreement:  With respect to a Mortgage Asset, the related "Servicing Agreement" specified on each Transfer Supplement.

Servicing Officer:  With respect to a Servicer, any officer or employee of the related Servicer involved in, or responsible for, the administration and servicing of the related Mortgage Loans and REO Properties whose name appears on a list of servicing officers attached to an

Officer's Certificate furnished by the related Servicer to the Participation Agent and the Legal Title Trustee, as such list may be amended from time to time.

Servicing Transfer Date:  With respect to a Mortgage Asset, the "Servicing Transfer Date" (if any) specified on the related Transfer Supplement.

Sub-Participation Interest Account:  As defined in the Participation Agreement.

Transfer Date:  With respect to a Mortgage Asset, the date on which such Mortgage Asset is conveyed by the Depositor to the Legal Title Trustee pursuant to Section 2.01 hereof and Section 3 of the related Transfer Supplement.

Transfer Supplement:  A transfer supplement in the form of Exhibit C hereto, which may be transmitted electronically by the Depositor and the Program Manager to the Legal Title Trustee and the Participation Agent.

Transferor:  With respect to a Mortgage Asset, the transferor specified on the related Transfer Supplement, from whom the Depositor acquired such Mortgage Asset pursuant to the related Mortgage Loan Purchase Agreement, and any successor in interest or assign.

Trust:  The Truman 2016 SC6 Title Trust, a trust created by this Agreement.

Trust Formation Date:  June 24, 2016.

Trust Fund:  The property held in trust by the Legal Title Trustee for the benefit of the Beneficiary and the Participants pursuant to this Agreement and the Participation Agreement, consisting of the Mortgage Assets (in each case subject to all rights of the related Participant under the Participation Agreement), together with a cash deposit into the Participation Interest Account by the Depositor of $100 to be made as of the Trust Formation Date and all other rights and items referred to in, and assigned or conveyed to the Legal Title Trustee as set forth under, Section 2.01(a) hereof.  For the avoidance of doubt, 100% of the beneficial interest in each Mortgage Asset will have been transferred to the related Participant, as of each Transfer Date, pursuant to the Participation Agreement.

## ARTICLE II

## DECLARATION OF TRUST

Section 2.01    Creation and Declaration of Trust; Acceptance and Acknowledgment by Legal Title Trustee.  (a)  On the Trust Formation Date and upon the execution of this Agreement, the Depositor has caused to be made with the Legal Title Trustee into the Participation Interest Account a cash deposit of $100, which amount, upon termination of the Trust Fund, shall be distributable to or at the order of the Beneficiary pursuant to Section 5.01(c) hereof.  The Legal Title Trustee hereby acknowledges receipt of such cash deposit in trust from the Depositor, which amount shall constitute the initial Trust Fund.  The Legal Title Trustee hereby declares that it will hold the Trust Fund in trust for the Beneficiary and the Participants.

The purpose of the Trust is to hold, protect and preserve the Trust Fund for the benefit of the Beneficiary and the Participants and not to carrying on or transact business. The parties intend that the Trust shall not be a "business trust" within the meaning of Chapter 1 of the New York General Associations Law nor a "business trust" within the meaning the United States Bankruptcy Code, 11. U.S.C. § 101. The name of the Trust created hereby for purposes of the applicable Uniform Commercial Code that governs the perfection of any security interest (including any interest of a buyer of receivables) granted by the Legal Title Trustee is "Truman 2016 SC6 Title Trust." The equity owner of the Trust shall be the owner or owners of any outstanding Participation Interests.

(b)     As contemplated by the execution and delivery of this Agreement, concurrently with the execution and delivery of each Transfer Supplement on or following the Effective Date, the Depositor hereby sells, transfers, assigns, sets over, deposits with and otherwise conveys to the Legal Title Trustee, in trust, without recourse (except to the extent specified herein), all right, title and interest of the Depositor in and to (except to the extent specified herein or in the related Transfer Supplement), all right, title and interest of the Depositor in and to the related Mortgage Assets (in each case, as of the related Transfer Date), including in each case all Outstanding Amounts related thereto at any time and collections in respect thereof received after the related Cut-off Date, the right to all payments of principal and interest or proceeds received with respect to such Mortgage Assets after the related Cut-off Date (expressly excluding any amounts received prior to such Cut-off Date), the Asset Files and the proceeds thereof, the Depositor's and/or the related Transferor's rights under any insurance policies related to such Mortgage Assets, the Depositor's and/or the related Transferor's security interest in any collateral pledged to secure such Mortgage Assets, including the Mortgaged Properties, and any proceeds of the foregoing. Unless otherwise consented to by the Program Manager, each such conveyance shall include, without limitation, all accounts, accounts receivable, contract rights, claims, choses in action, general intangibles, chattel paper, instruments, documents, money, deposit accounts, certificates of deposit, goods, notes, drafts, letters of credit, advices of credit, investment property, uncertificated securities and rights to payment of any and every kind consisting of, arising from or relating to the foregoing assets.

(c)     In connection with such transfer and assignment of Mortgage Assets as provided above and in any related Transfer Supplement, the Depositor does hereby and shall thereby also sell, transfer, assign and otherwise convey to the Legal Title Trustee for the Trust Fund for the Beneficiary of the Trust Fund and the related Participants (subject to the proviso below) all of the Depositor's rights, with respect to the Mortgage Assets under each related Mortgage Loan Purchase Agreement, each Interim Servicing Agreement and any other agreement or instrument identified in the related Transfer Supplement, and the Legal Title Trustee shall, subject to the provisions hereof, be entitled to exercise all of the rights of the Depositor under such agreements and instruments.

(d)     In connection with such transfer and assignment as provided above, the Depositor shall deliver or shall cause to be delivered the related Asset Files in accordance with the terms of the Custodial Agreement. For the avoidance of doubt, on each Transfer Date, pursuant to the terms of the Custodial Agreement, a "Transaction Addendum" (as defined therein) shall be executed with respect to the related Mortgage Assets.

(e)     The Depositor hereby covenants to deliver or cause to be delivered, on each Transfer Date, the applicable Mortgage Assets and any other applicable property and documentation constituting or related to the Trust Fund.

(f)     The Legal Title Trustee, by execution and delivery hereof accepts the Trust Fund and by execution and delivery of each related Transfer Supplement, will acknowledge receipt (by the Custodian on behalf of the Legal Title Trustee) of the Asset Files pertaining to the Mortgage Assets listed on the Asset Schedule attached to such Transfer Supplement, subject to any defects or exceptions noted in the certification given pursuant to the Custodial Agreement and further subject to the Custodian's review thereof as specified therein. The Legal Title Trustee declares that it holds and will hold all assets included in the definition of "Trust Fund" from time to time in trust, pursuant to the terms of this Agreement, for the benefit of the Beneficiary and the Participants.

Section 2.02    Initial Section 404 Notices. The Program Manager, on behalf of the Legal Title Trustee and at the expense of the Trust Fund, shall prepare and distribute the Section 404 Notice within 30 days of each Transfer Date to each Mortgagor in connection with the sale of the related Mortgage Loans to the Legal Title Trustee for the Trust Fund for the benefit of the Beneficiary of the Trust Fund and the related Participants. Each such Section 404 Notice shall conform to the form of notice attached hereto as Exhibit A, subject to any changes necessitated by applicable law and regulatory guidance and approved by the Legal Title Trustee. The Program Manager shall promptly send written confirmation to the Legal Title Trustee upon its completion of distribution of such Section 404 Notices. Each of the Program Manager and the Legal Title Trustee shall be reimbursed by the Participation Agent on behalf of the related Participants pursuant to the terms of the Participation Agreement for any respective costs and expenses incurred by it in connection with such Section 404 Notices from amounts on deposit in the Participation Interest Account prior to distributions to the related Participants.

Section 2.03    Transfers of Mortgage Assets. The Participation Agent, on behalf and at the direction of the related Participant, may direct the Legal Title Trustee to sell or transfer any Mortgage Asset to another Person (identified by the Participation Agent). The Legal Title Trustee shall deposit any Purchase Price received in connection with such sale or transfer with the Participation Agent for deposit in the Participation Interest Account and for further deposit in the Sub-Participation Interest Account for the related Participant by the Participation Agent. The Legal Title Trustee shall, in accordance with any such direction, enter into one or more sale or assignment agreements and transfer any such Mortgage Assets and other assets to the transferee identified by the Participation Agent on behalf of the Beneficiary and the related Participant.

Promptly following any such transfer of Mortgage Assets, the Legal Title Trustee shall cause the Custodian, pursuant to Section 9 of the Custodial Agreement, to release the Asset Files to the transferee of such Mortgage Assets, or otherwise upon its order. Promptly following any transfer of Mortgage Assets, the Legal Title Trustee shall notify each related Servicer in writing of the date of sale and the identity of the transferee.

In connection with any transfer of a Mortgage Loan as set forth herein, the Depositor agrees to cause the related transferee to comply with its obligation to send the related Section 404 Notice required under the Helping Families Act. The Legal Title Trustee shall not

bear any costs relating to the preparation or distribution of any such Section 404 Notice. The Depositor shall be reimbursed for any costs and expenses incurred by it in connection with such Section 404 Notices by the Participation Agent on behalf of the related Participants as provided in the Participation Agreement.

Any servicing-related transfer costs associated with a transfer of the Mortgage Assets for servicing shall be paid or reimbursed as and to the extent provided for in the Participation Agreement.

Section 2.04    Granting Clause. The conveyance of the Depositor's right, title and interest in and to property constituting the Trust Fund pursuant to this Agreement and any related Transfer Supplement shall constitute, and shall be construed as, a sale of such property and not a grant of a security interest to secure a loan. Following the Effective Date, it is intended that the conveyance of the Depositor's right, title and interest in and to property constituting the Trust Fund pursuant to this Agreement and any related Transfer Supplement shall constitute, and shall be construed as, a sale of such property and not a grant of a security interest to secure a loan. However, if any such conveyance is deemed to be in respect of a loan, it is intended that the rights and obligations of the parties shall be established pursuant to the terms of this Agreement (and any related Transfer Supplements). If the trust created by this Agreement terminates prior to the satisfaction of the claims of the Beneficiary, the Participation Agent and the Participants, the Legal Title Trustee shall be deemed to be the collateral agent for the benefit of such Person, and all proceeds shall be distributed as herein provided. In the event the Legal Title Trustee is deemed to be collateral agent, the parties hereto agree to enter into an agreement governing the Legal Title Trustee's role as collateral agent.

Section 2.05    Liability of the Depositor and Program Manager.

(a)    Each of the Depositor and the Program Manager shall be liable in accordance herewith only to the extent of the obligations specifically imposed by the Legal Title Basic Documents.

(b)    None of the Depositor, the Program Manager or any of their members, directors, managers, officers, employees or agents, shall be under any liability to the Trust Fund or the Legal Title Trustee for any action taken, or for refraining from the taking of any action, in good faith pursuant to this Agreement, or for errors in judgment; *provided, however*, that this provision shall not protect the Depositor or the Program Manager against any breach of warranties or representations made herein, or against any specific liability imposed on any such party pursuant to this Agreement or against any liability which would otherwise be imposed by reason of willful misfeasance, bad faith or gross negligence in the performance of their duties or by reason of reckless disregard of their obligations or duties hereunder.

(c)    Each of the Depositor and the Program Manager and any of their members, directors, managers, officers, employees or agents, may rely in good faith on any document of any kind *prima facie* properly executed and submitted by any Person respecting any matters arising hereunder.

(d)     Each of the Depositor and the Program Manager shall be indemnified and held harmless from the Trust Fund and the related Participants (to be paid by the Participation Agent on behalf of the related Participants pursuant to the terms of the Participation Agreement) against any loss, liability or expense (except as otherwise provided therein with respect to expenses) (including reasonable legal fees and disbursements of counsel) incurred on their part that may be sustained in connection with, arising out of, or relating to, this Agreement, the Participation Interests, the Servicing Agreements or the transactions contemplated hereby or thereby (except to the extent that the Depositor or the Program Manager, as applicable, is indemnified by a Servicer under the related Servicing Agreement), other than any such loss, liability or expense related to the Depositor's or the Program Manager's, as applicable, failure to perform its duties in compliance with this Agreement or any such loss, liability or expense incurred by reason of the Depositor's or the Program Manager's, as applicable, willful misfeasance, bad faith or gross negligence in the performance of its own duties hereunder or by reason of reckless disregard of its own obligations and duties hereunder.

(e)     Neither the Depositor nor the Program Manager shall be under any obligation to appear in, prosecute or defend any legal action that is not incidental to its duties under this Agreement and that in its opinion may involve it in any expense or liability; *provided, however*, that the Depositor or the Program Manager, as applicable, may in its discretion undertake any such action which it may deem necessary or desirable with respect to this Agreement and the rights and duties of the parties hereto and the interests of the Participants and for the benefit of the Trust Fund. In such event, the legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities of the Participants, and the Depositor and the Program Manager, as applicable, shall be entitled to be reimbursed therefor as provided in the Participation Agreement.

(f)     Neither the Depositor nor the Program Manager shall be liable for any acts or omissions of any Servicer.

Section 2.06   Representations, Warranties and Covenants of the Depositor.

(a) The Depositor hereby represents, warrants and covenants to the parties hereto for their own benefit and for the benefit of the Beneficiary and the Participants that, as of the Trust Formation Date and as of each Transfer Date:

(i)  The Depositor has been duly formed and is validly existing as a limited liability company in good standing under the laws of the State of Delaware, with full power and authority to own its assets and conduct its business as presently being conducted.

(ii)  The execution and delivery of this Agreement by the Depositor and its performance and compliance with the terms of this Agreement have been duly authorized by all necessary company action on the part of the Depositor.

(iii)  This Agreement, assuming due authorization, execution and delivery by the other parties hereto, constitutes a valid, legal and binding obligation of the Depositor, enforceable against it in accordance with the terms hereof, except as the enforcement

hereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity (whether considered in a proceeding or action in equity or at law).

(iv)  The Depositor is not in violation of, and the execution, delivery and performance of this Agreement by the Depositor and its compliance with the terms hereof will not constitute a violation with respect to, any existing law or regulation or any order or decree of any court or any order, regulation or demand of any federal, state, municipal or governmental agency, which violation would materially and adversely affect the condition (financial or other) or operations of the Depositor or its properties or would have consequences that would adversely affect its performance hereunder.

## ARTICLE III

## PARTICIPATION AGREEMENT MATTERS

Section 3.01   Participation Agreement.  On the date specified by the Depositor to the Legal Title Trustee, the Legal Title Trustee and the Program Manager shall enter into the Participation Agreement with U.S. Bank National Association, in its capacity as Participation Agent, pursuant to which a Participation Interest will be created in respect of each Mortgage Asset.

## ARTICLE IV

## CONCERNING THE LEGAL TITLE TRUSTEE

Section 4.01   Duties of Legal Title Trustee.

(a)      The Legal Title Trustee:

(i) undertakes to perform such duties and only such duties as are specifically set forth in this Agreement or as may be directed by the Participation Agent (acting at the direction of one or more Participants) or the Program Manager in accordance with Section 4.02 hereof and shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement and no implied covenants or obligations shall be read into this Agreement against the Legal Title Trustee; and

(ii) in the absence of bad faith on its part, may conclusively rely, as to the truth of the statements and the correctness of the statements or opinions expressed therein, upon certificates or opinions furnished to the Legal Title Trustee and on their face conforming to the requirements of this Agreement; *provided, however*, that the Legal Title Trustee shall examine the certificates and opinions to determine whether or not they conform on their face to the requirements of this Agreement.

(b)      The Legal Title Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, or for its failure to perform obligations expressly undertaken by it in this Agreement, except that:

(i)    this paragraph does not limit the effect of paragraph (a) of this Section;

(ii)    the Legal Title Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Legal Title Trustee was negligent in ascertaining the pertinent facts; and

(iii)    the Legal Title Trustee shall not be required to take notice or be deemed to have notice or knowledge of any default (including any default of a Servicer under a Servicing Agreement) unless a Responsible Officer of the Legal Title Trustee obtains actual knowledge or written notice of such default. In the absence of such actual knowledge or notice, the Legal Title Trustee may conclusively assume that there is no default.

(c)    Every provision of this Agreement that in any way relates to the Legal Title Trustee is subject to paragraphs (a), (b) and (f) of this Section. Every provision of this Agreement or any Basic Document relating to the conduct of or affecting the liability of or affording protection to the Legal Title Trustee shall be subject to the provisions of this Section and Section 4.03 hereof.

(d)    The Legal Title Trustee shall not be liable for indebtedness evidenced by or arising under any of the Legal Title Basic Documents, except as the Legal Title Trustee may agree in writing.

(e)    Money held in trust by the Legal Title Trustee need not be segregated from other funds except to the extent required by law or the terms of this Agreement.

(f)    No provision of this Agreement shall require the Legal Title Trustee to expend, advance or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it; *provided, however,* that the Legal Title Trustee shall not refuse or fail to perform any of its duties hereunder solely as a result of nonpayment of its normal fees and expenses unless the Legal Title Trustee shall first have provided the Depositor, the Program Manager and the Participation Agent with notice of such nonpayment and given the Depositor, the Program Manager and the Participation Agent the opportunity to advance funds in respect of such fees and expenses, and each of the Depositor, the Program Manager and the Participation Agent shall have failed promptly to do so.

(g)    The Legal Title Trustee shall execute and deliver this Agreement, the Participation Agreement and such other documents and instruments as shall be necessary or appropriate in accordance with its duties and obligations hereunder.

Section 4.02    Action Upon Instruction.

(a)    The Participation Agent at the direction of the Participants pursuant to the Participation Agreement (and the Program Manager on behalf of the Participation Agent) shall have the power to direct the Legal Title Trustee by written instrument in matters relating to the Trust Fund, except to the extent inconsistent with the provisions of this Agreement, any Basic

760693-3-70 Truman 2016 SC6 Title Trust
Trust Agreement

Document or applicable law, as determined by the Participants or the Program Manager acting on their behalf, including, by way of illustration and not of limitation, in connection with the execution of documents necessary or appropriate to the acquisition, disposition or protection of property constituting the Trust Fund, enforcement of the rights and protection of the interests of the Participants and the Participation Agent on behalf of the Participants, and amendment of this Agreement. Each of the parties hereto and the Participation Agent on behalf of each Participant agree that the Program Manager and the Participation Agent may direct the Legal Title Trustee hereunder on behalf of the related Participants under the Legal Title Basic Documents and that the Legal Title Trustee has no obligation to act absent such direction and that the Legal Title Trustee is fully protected in relying on such direction.

(b)     The Legal Title Trustee shall not be required to take any action hereunder or under any Basic Document if the Legal Title Trustee shall have reasonably determined, or shall have been advised by counsel, that such action is likely to result in liability on the part of the Legal Title Trustee or is contrary to the terms hereof or of any Basic Document or is otherwise contrary to law.

(c)     Whenever the Legal Title Trustee is unable to decide between alternative courses of action permitted or required by the terms of this Agreement, the Legal Title Trustee shall promptly give notice (in such form as shall be appropriate under the circumstances) to the Participation Agent and the Program Manager requesting instruction as to the course of action to be adopted, and to the extent that the Legal Title Trustee acts or refrains from acting in good faith in accordance with any written instruction of the Participation Agent at the direction of the Participants (or of the written instruction of the Program Manager on behalf of the Participation Agent), the Legal Title Trustee shall not be liable, on account of such action or inaction, to any Person.

In the event that the Legal Title Trustee is unsure as to the application of any provision of this Agreement or any Basic Document or any such provision is ambiguous as to its application, or is, or appears to be, in conflict with any other applicable provision, or in the event that this Agreement permits any determination by the Legal Title Trustee or is silent or is incomplete as to the course of action that the Legal Title Trustee is required to take with respect to a particular set of facts, the Legal Title Trustee may give notice (in such form as shall be appropriate under the circumstances) to the Participation Agent and the Program Manager requesting instruction and, to the extent that the Legal Title Trustee acts or refrains from acting in good faith in accordance with any such instruction received, the Legal Title Trustee shall not be liable, on account of such action or inaction, to any Person.

Section 4.03   Certain Matters Affecting the Legal Title Trustee.

(a)     The Legal Title Trustee, and any director, officer, employee or agent of the Legal Title Trustee, may rely in good faith on any document of any kind which, *prima facie*, is properly executed and submitted by any appropriate Person respecting any matters arising hereunder. The Legal Title Trustee may rely on any document believed by it to be genuine and to have been signed or presented by the proper person. The Legal Title Trustee need not investigate any fact or matter stated in any such document.

(b)     Before the Legal Title Trustee acts or refrains from acting, other than pursuant to the instruction of the Participation Agent or the Program Manager as set forth in Section 4.02, it may require an Officer's Certificate or an Opinion of Counsel, which shall not be at the expense of the Legal Title Trustee. The Legal Title Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on an Officer's Certificate or Opinion of Counsel. The right of the Legal Title Trustee to perform any discretionary act enumerated in this Agreement or in any Basic Document shall not be construed as a duty and the Legal Title Trustee shall not be answerable for other than its negligence or willful misconduct in the performance of such act.

(c)     The Legal Title Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys or a custodian or nominee.

(d)     The Legal Title Trustee shall not be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers; *provided* that the Legal Title Trustee's conduct does not constitute willful misconduct, negligence or bad faith.

(e)     The Legal Title Trustee may consult with counsel, and any advice or Opinion of Counsel with respect to legal matters relating to this Agreement or any Basic Document shall be full and complete authorization and protection from liability in respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with any advice or Opinion of Counsel of such counsel.

(f)     The rights and protections afforded to the Legal Title Trustee pursuant to this Article IV shall be afforded to U.S. Bank National Association in its capacity as Participation Agent under the Participation Agreement, so long as it remains the Participation Agent.

Section 4.04     Legal Title Trustee's Disclaimer. The Legal Title Trustee shall not be responsible for and makes no representation as to the validity or adequacy of any of the Legal Title Basic Documents (except to the extent explicitly provided in Section 4.10) or the assets of the Trust Fund; it shall not be responsible for any statement of the Depositor, the Program Manager, the Beneficiary, the Participation Agent or any Servicer in this Agreement, any other Basic Document or in any document issued in connection with the transactions contemplated under the Participation Agreement.

Section 4.05     Compensation, Expenses and Indemnity.

The Legal Title Trustee shall not receive any compensation hereunder, but shall be compensated for its services as trustee hereunder as Participation Agent to the extent provided in the Participation Agreement. In addition, the Legal Title Trustee shall be reimbursed as provided in the Participation Agreement for all reasonable expenses and indemnified amounts incurred or made by it under this Agreement or under any other Basic Document and with respect to any Mortgage Loan or any REO Property, including costs of collection. Such expenses shall include the reasonable compensation, expenses, disbursements and advances of the Legal Title Trustee's agents, counsel, accountants and experts.

The Legal Title Trustee shall be indemnified and held harmless from the Trust Fund and by the related Participants (to be paid by the Participation Agent on behalf of the related

Participants pursuant to the terms of the Participation Agreement) against any loss, liability or expense (except as otherwise provided therein with respect to expenses) (including reasonable legal fees and disbursements of counsel) incurred on their part that may be sustained in connection with, arising out of, or relating to, this Agreement, the Participation Interests, the Servicing Agreements or the transactions contemplated hereby or thereby (except to the extent that the Legal Title Trustee is indemnified by a Servicer under the related Servicing Agreement), other than any such loss, liability or expense related to the Legal Title Trustee's failure to perform its duties in compliance with this Agreement or any such loss, liability or expense incurred by reason of the Legal Title Trustee's willful misfeasance, bad faith or gross negligence in the performance of its own duties hereunder or by reason of reckless disregard of its own obligations and duties hereunder.

Section 4.06    Replacement of Legal Title Trustee. The Legal Title Trustee may be removed by the Beneficiary, the Depositor, the Program Manager or (as expressly provided in this Agreement, or at the direction of the Program Manager or the Depositor) the Participation Agent upon 30 days' prior written notice to the Legal Title Trustee. The Legal Title Trustee may resign upon 90 days' prior written notice to the Beneficiary, the Depositor, the Program Manager and the Participation Agent. The Legal Title Trustee may also resign upon notice to the Depositor, the Program Manager, the Beneficiary and the Participation Agent if the Participation Agent fails to pay, or to cause to be paid, any amounts owing to the Legal Title Trustee, including expenses or indemnities of the Legal Title Trustee, as required by, and in accordance with the timeframe specified in, the Participation Agreement. In addition, in the event that the Legal Title Trustee is removed or resigns, if the Legal Title Trustee is also the Participation Agent, the Legal Title Trustee shall be removed or resign, as applicable, from its role as Participation Agent. Following such notice of removal or resignation, the Beneficiary, at its expense, shall appoint a successor Legal Title Trustee satisfying the requirements of Section 4.09 hereof. No resignation or removal of the Legal Title Trustee shall be effective except upon the appointment of a successor Legal Title Trustee. If no successor has been appointed within such 30 or 90 day period (or, in the case of resignation of the Legal Title Trustee in connection with the failure of the Participation Agent to pay or to cause to be paid any unpaid amounts owed to the Legal Title Trustee under the Participation Agreement, within 10 days of receipt by the Beneficiary, the Depositor and the Participation Agent of the applicable notice of resignation from the Legal Title Trustee), as applicable, the Participation Agent or the Legal Title Trustee may, at the expense of the Participants as provided in the Participation Agreement, petition a court of competent jurisdiction to appoint a successor Legal Title Trustee. In the event that the Legal Title Trustee is removed, the Legal Title Trustee shall be under no obligation to refund any payments received by it prior to such removal.

Within 30 days following the appointment of any successor Legal Title Trustee, the Program Manager shall distribute, on behalf of the successor Legal Title Trustee, the Section 404 Notice to each Mortgagor. Each such Section 404 Notice shall conform to the form of notice attached hereto as Exhibit A, subject to any changes necessitated by applicable law and regulatory guidance and approved by the successor Legal Title Trustee. The distribution by the Program Manager of each such Section 404 Notice shall also comply with all applicable regulatory requirements then in effect with respect to the provision of any Section 404 Notice. The Program Manager shall promptly send written confirmation to the successor Legal Title Trustee upon its completion of distribution of such Section 404 Notices.

Any costs incurred by the Program Manager and/or the successor Legal Title Trustee in connection with the distribution of such Section 404 Notices shall be (i) reimbursed by the successor Legal Title Trustee from amounts received from the Participation Agent under the Participation Agreement in the event the related appointment of a successor Legal Title Trustee is the result of the removal of the Legal Title Trustee without cause, (ii) paid by the removed Legal Title Trustee, in the event the related appointment of successor Legal Title Trustee is the result of the removal of the Legal Title Trustee for cause, or (iii) paid by the resigning Legal Title Trustee, in the event the related appointment of successor Legal Title Trustee is the result of the voluntary resignation of the Legal Title Trustee; *provided, however,* that such costs shall be paid as provided in the Participation Agreement where such voluntary resignation of the Legal Title Trustee is in response to any failure of the Participation Agent to pay, or to cause to be paid, any unpaid fees, if any, of the Legal Title Trustee, as required by, and in accordance with the timeframe specified in, the Participation Agreement.

Section 4.07  Successor Legal Title Trustee by Merger. If the Legal Title Trustee consolidates with, merges or converts into, or transfers all or substantially all its corporate trust business or assets to, another corporation or banking association, the resulting, surviving or transferee corporation without any further act shall be the successor legal title trustee; *provided* that such corporation or banking association shall be otherwise qualified and eligible under Section 4.09.

Section 4.08  Appointment of Co-Trustee, Separate Trustee.

(a)    Notwithstanding any other provisions of this Agreement, at any time, for the purpose of meeting any legal requirement of any jurisdiction in which any part of the Trust Fund may at such time be located, the Legal Title Trustee (with the prior written consent of the Program Manager and the Beneficiary) and the Beneficiary shall each have the power and may execute and deliver all instruments to appoint one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees, of all or any part of the Trust Fund, and to vest in such Person or Persons, in such capacity and for the benefit of the Beneficiary and the Participation Agent on behalf of the Participants, such title to the Trust Fund, or any part thereof, and, subject to the other provisions of this Section, such powers, duties, obligations, rights and trusts as the Legal Title Trustee may consider necessary or desirable. No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor trustee under Section 4.09 and no notice to the Beneficiary or the Participation Agent of the appointment of any co-trustee or separate trustee shall be required under Section 4.06 hereof.

(b)    Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i)    all rights, powers, duties and obligations conferred or imposed upon the Legal Title Trustee shall be conferred or imposed upon and exercised or performed by the Legal Title Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Legal Title Trustee joining in such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed the Legal Title Trustee shall be incompetent or unqualified to perform such act or acts, in which event such

rights, powers, duties and obligations (including the holding of title to the Trust Fund or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Legal Title Trustee;

(ii)    no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder; and

(iii)    the Legal Title Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee.

(c)    Any notice, request or other writing given to the Legal Title Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them. Every instrument appointing any separate trustee or co-trustee shall refer to this Agreement and the conditions of this Article IV. Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, either jointly with the Legal Title Trustee or separately, as may be provided therein, subject to all the provisions of this Agreement, specifically including every provision of this Agreement relating to the conduct of, affecting the liability of, or affording protection to, the Legal Title Trustee. Every such instrument shall be filed with the Legal Title Trustee.

(d)    Any separate trustee or co-trustee may at any time constitute the Legal Title Trustee, its agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Agreement on its behalf and in its name. If any separate trustee or co-trustee shall cease to exist, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Legal Title Trustee, to the extent permitted by law, without the appointment of a new or successor legal title trustee.

(e)    The Legal Title Trustee agrees to instruct the co-trustees, if any, to the extent necessary to fulfill the Legal Title Trustee's obligations hereunder.

Section 4.09    Eligibility; Disqualification. The Legal Title Trustee shall at all times (i) have a combined capital and surplus of at least $50,000,000 as set forth in its most recent published annual report of condition, (ii) if and so long as the securities are rated by either Moody's or S&P, have a long term deposit rating of at least A or the equivalent by either Moody's or S&P, as applicable, (iii) not be an Affiliate of the Beneficiary, (iv) be (x) a corporation or association organized and doing business under the laws of the United States or (y) organized and doing business under the laws of any State thereof and having all requisite licenses and approvals to acquire, hold and dispose of mortgage loans, (v) be authorized to exercise corporate trust powers and (vi) be subject to supervision or examination by a federal or state authority. In case at any time the Legal Title Trustee shall cease to be eligible in accordance with provisions of this Section, the Legal Title Trustee shall resign immediately in the manner and with the effect specified in Section 4.06 hereof.

If at any time the Legal Title Trustee shall cease to be eligible in accordance with the provisions of this Section 4.09 and shall fail to resign after written request therefor by the

Depositor, the Program Manager, the Beneficiary or the Participation Agent, or if at any time the Legal Title Trustee shall be legally unable to act, or shall be adjudged bankrupt or insolvent, or a receiver of the Legal Title Trustee or of its property shall be appointed, or any public officer shall take charge or control of the Legal Title Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, then the Program Manager may remove the Legal Title Trustee upon written notice.

Section 4.10    Representations and Warranties of the Legal Title Trustee.  U.S. Bank National Association, in its individual capacity, hereby represents, warrants and covenants to the parties hereto for their own benefit and for the benefit of the Beneficiary and the Participants that, as of the Trust Formation Date and as of each Transfer Date:

(a)    U.S. Bank National Association is duly organized and validly existing as a national banking association in good standing under the laws of the United States with power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted;

(b)    U.S. Bank National Association has the power and authority to execute and deliver this Agreement and to carry out its terms; and the execution, delivery and performance of this Agreement have been duly authorized by U.S. Bank National Association by all necessary corporate action;

(c)    the consummation of the transactions contemplated by this Agreement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under the articles of organization or bylaws of U.S. Bank National Association or any agreement or other instrument to which U.S. Bank National Association is a party or by which it is bound;

(d)    there are no proceedings or investigations pending or, to the best knowledge of U.S. Bank National Association, threatened before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over U.S. Bank National Association or its property: (i) asserting the invalidity of this Agreement, (ii) seeking to prevent the consummation of any of the transactions contemplated by this Agreement or (iii) seeking any determination or ruling that might materially and adversely affect the performance by U.S. Bank National Association of its obligations under, or the validity or enforceability of, this Agreement; and

(e)    this Agreement has been duly executed and delivered by U.S. Bank National Association and constitutes a valid, legal and binding obligation of U.S. Bank National Association, enforceable against it in accordance with the terms hereof, except as the enforcement hereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity (whether considered in a proceeding or action in equity or at law).

ARTICLE V

PURCHASE OF THE TRUST FUND
AND TERMINATION OF THIS AGREEMENT

Section 5.01    Termination of Trust Agreement Upon Repurchase or Liquidation of All Mortgage Loans. (a) The obligations and responsibilities of the Legal Title Trustee created hereby shall terminate upon the final payment or other liquidation of the last Mortgage Loan remaining in the Trust Fund and the disposition of all Loan Collateral and REO Properties at the direction of the Participation Agent at the direction of all Participants (or at the direction of the Program Manager on behalf of the Participation Agent); *provided, however*, that in no event shall the trust arrangement created hereby continue beyond the expiration of 21 years from the death of the last survivor of the descendants of Joseph P. Kennedy, the late Ambassador of the United States to the Court of St. James's, living on the date hereof.

(b)    Upon the written direction of the Participation Agent at the direction of each of the Participants (or at the direction of the Program Manager on behalf of the Participation Agent), the Legal Title Trustee shall transfer the Mortgage Loans, the Loan Collateral and the REO Properties to the designee of the Participation Agent on behalf of the Participants.

(c)    After the sale or other disposition of the Mortgage Loans, Loan Collateral and REO Properties pursuant to clause (a) or (b) above and upon the written direction of the Beneficiary, the Legal Title Trustee shall transfer any remaining property of the Trust Fund other than the Mortgage Loans, the Loan Collateral and the REO Properties to the Beneficiary or its designee.

Section 5.02    Procedure Upon Termination of Trust Agreement. (a) Notice of any termination pursuant to the provisions of Section 5.01 above shall be given promptly by the Legal Title Trustee by first class mail to the Depositor, the Participation Agent, the Program Manager, the Depositor and the Beneficiary mailed upon the final payment or other liquidation of the last Mortgage Loan or Loan Collateral remaining in the Trust Fund.

(b)    Any reasonable expenses incurred by the Legal Title Trustee in connection with any termination of this Agreement or liquidation of the Trust Fund shall be paid in accordance with Section 4.05.

ARTICLE VI

RIGHTS OF THE BENEFICIARY AND THE PARTICIPATION AGENT

Section 6.01    Limitation on Rights of Beneficiary. (a) The death or incapacity of the Beneficiary shall not operate to terminate this Agreement, nor entitle the Beneficiary's legal representatives or heirs to claim an accounting or take any action or proceeding in any court for a partition or winding up of the Trust Fund, nor otherwise affect the rights, obligations and liabilities of the parties hereto or any of them. Except as otherwise expressly provided herein, the Beneficiary, solely by virtue of its status as the Beneficiary, shall not have any right to vote or in any manner otherwise control the operation and management of the Trust Fund, or the

obligations of the parties hereto, nor shall the Beneficiary be under any liability to any third person by reason of any action taken by the parties to this Agreement pursuant to any provision hereof.

(b)    The Beneficiary, solely by virtue of its status as Beneficiary, shall not have any right, by virtue of or by availing itself of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, unless also the Beneficiary shall have made written request upon the Legal Title Trustee to institute such action, suit or proceeding in its own name as Legal Title Trustee hereunder and shall have offered to the Legal Title Trustee such indemnity satisfactory to it as it may require against the cost, expenses and liabilities to be incurred therein or thereby, and the Legal Title Trustee, for thirty days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding and no direction inconsistent with such written request shall have been given such Legal Title Trustee during such thirty-day period by the Beneficiary; it being understood and intended, and being expressly covenanted by the Beneficiary and the Legal Title Trustee, that the Beneficiary shall not have any right in any manner whatever by virtue or by availing itself of any provision of this Agreement to enforce any right under this Agreement, except in the manner herein provided. For the protection and enforcement of the provisions of this Section, the Beneficiary and the Legal Title Trustee shall be entitled to such relief as can be given either at law or in equity.

Section 6.02    Acts of the Participation Agent.  Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement to be given or taken by the Participation Agent on behalf of a Participant or the Program Manager on behalf of a Participant may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by the Participation Agent on behalf of the related Participants in person or by an agent duly appointed in writing; and, except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Legal Title Trustee. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as an "Act" of the Participation Agent or the Program Manager, in each case, on behalf of the related Participants signing such instrument or instruments.  Proof of execution of any such instrument or of a writing appointing any such agents shall be sufficient for any purpose of this Agreement and conclusive in favor of the Legal Title Trustee.

(a)    The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by the certificate of any notary public or other officer authorized by law to take acknowledgments or deeds, certifying that the individual signing such instrument or writing acknowledged to him the execution thereof.  Whenever such execution is by an officer of a corporation or a member of a partnership on behalf of such corporation or partnership, such certificate or affidavit shall also constitute sufficient proof of his authority.  The fact and date of the execution of any such instrument or writing, or the authority of the individual executing the same, may also be proved in any other manner which the Legal Title Trustee deems sufficient.

ARTICLE VII

MORTGAGE ASSET DOCUMENTS

Section 7.01   Custodian To Retain Possession of Certain Documents.   Until all amounts distributable in respect of the Trust Fund have been distributed in full, the Legal Title Trustee shall cause the Custodian on behalf of each of the Legal Title Trustee, the Depositor, the Program Manager, the Participation Agent and the Participants to retain possession and custody of each Asset File in accordance with and subject to the terms and conditions of this Agreement, the Participation Agreement and the Custodial Agreement.

Section 7.02   Release of Asset Files.   (a) Upon becoming aware of the payment in full of any Mortgage Loan, or upon receipt by the related Servicer of a notification that payment in full has been escrowed in a manner customary for such purposes for payment to the Participation Agent on behalf of the related Participant, the related Servicer, pursuant to the terms of Section 9 of the Custodial Agreement, shall request the Custodian to deliver to such Servicer the related Asset File. Upon receipt of such request, the Custodian, on the Legal Title Trustee's behalf and pursuant to the terms of Section 9 of the Custodial Agreement, shall promptly release the related Asset File to the related Servicer and neither the Legal Title Trustee nor the Custodian shall have any further responsibility with regard to such Asset File. Upon any payment in full, the Legal Title Trustee authorizes the related Servicer to give, as agent for the Legal Title Trustee, as mortgagee under the related Mortgage, an instrument of satisfaction (or Assignment without recourse) regarding the Mortgage, which instrument of satisfaction or assignment, as the case may be, shall be delivered to the Person or Persons entitled thereto against receipt therefor of such payment. Any expenses incurred in connection with such instrument of satisfaction or assignment shall be reimbursable under the Participation Agreement.

(b)   From time to time and as appropriate for the servicing, repossession or foreclosure of any Mortgage Loan, the Legal Title Trustee (or the Custodian on its behalf) shall execute such documents as shall be prepared and furnished to the Legal Title Trustee and the Custodian by the related Servicer (in form reasonably acceptable to the Legal Title Trustee) and as are necessary to the prosecution of any such proceedings, including, without limitation, any powers of attorney requested pursuant to the terms of the Servicing Agreement. The Custodian on behalf of the Legal Title Trustee, shall, upon request of the related Servicer pursuant to the terms of Section 7 of the Custodial Agreement, release the related Mortgage File to the related Servicer.

Section 7.03   Mortgage Loan Purchase Agreements and Interim Servicing Agreements. The Program Manager, on behalf of each related Participant and the Legal Title Trustee, shall perform all of the obligations of the "Purchaser," "Buyer" or "Owner" (or similar terms therein), as the case may be, under each Mortgage Loan Purchase Agreement and Interim Servicing Agreement assigned by the Depositor or the Program Manager to, or entered into by, the Legal Title Trustee, and the Program Manager, on behalf of each related Participant, shall be entitled to exercise any and all rights of the "Purchaser," "Buyer" or "Owner" (or similar terms therein), as the case may be, on behalf of the related Participants and the Legal Title Trustee. The Program Manager shall be reimbursed by the Participation Agent on behalf of the related Participants pursuant to the terms of the Participation Agreement for any respective costs,

expenses or indemnity payment obligations incurred by it in connection with any Mortgage Loan Purchase Agreement or Interim Servicing Agreement.

ARTICLE VIII

TAX ADMINISTRATION

Section 8.01    Tax Administration.  Each of the Depositor and the Program Manager intends, the Beneficiary agrees and the Legal Title Trustee acknowledges, that for federal income tax purposes, the arrangement created pursuant to this Agreement shall not be treated as an entity separate from the Beneficiary (a "disregarded entity") for U.S. federal income tax purposes and all items of income, gain, deduction, loss, and credit against tax (collectively, "Tax Items") attributable to any asset the beneficial ownership of which is held in the Trust Fund established pursuant to this Agreement shall be treated as Tax Items of the Beneficiary.

ARTICLE IX

MISCELLANEOUS PROVISIONS

Section 9.01    Binding Nature of Agreement; Assignment.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

Section 9.02    Merger and Integration.  Except as specifically stated otherwise herein, this Agreement sets forth the entire understanding of the parties relating to the subject matter hereof, and all prior understandings, written or oral, are superseded by this Agreement.  This Agreement may not be modified, amended, waived or supplemented except as provided herein.

Section 9.03    Amendment.  (a)  This Agreement may be amended from time to time by the parties hereto, with the written consent of the Beneficiary, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or of modifying in any manner the rights of the Beneficiary, *provided* that no such amendment shall fail to comply with any of the provisions of the Participation Agreement.  The Legal Title Trustee may set a record date for purposes of determining the Beneficiary entitled to give written consent or waive compliance as authorized or permitted by this Section 9.03(a).  Such record date shall not be more than 30 days prior to the first solicitation to such consent or waiver.

(b)    Promptly after the execution of any amendment or consent pursuant to this Section 9.03, the Legal Title Trustee shall cause to be furnished a copy of such amendment to the Beneficiary.

(c)    It shall not be necessary for the Beneficiary under this Section 9.03 to consent to the particular form of any proposed amendment, but it shall be sufficient if such consent shall approve the substance thereof.  The manner of obtaining consents and of evidencing the authorization of the execution thereof by the Beneficiary shall be subject to such reasonable requirements as the Legal Title Trustee may prescribe.

(d)    The Legal Title Trustee may, but shall not be obligated to, enter into any such amendment which affects the Legal Title Trustee's own rights, duties or immunities under this Agreement or otherwise.

(e)    Prior to or simultaneous with entering into any amendment of any Basic Document, the Legal Title Trustee shall be entitled to receive an Opinion of Counsel from the party requesting the amendment to the effect that such amendment is permitted by the terms of the related Basic Document and that all conditions precedent to the execution of such amendment have been met.

Section 9.04    Governing Law; Consent To Jurisdiction; Waiver Of Jury Trial. (a) THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

(b)    EACH PARTY HERETO HEREBY SUBMITS (TO THE EXTENT PERMITTED BY APPLICABLE LAW) TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, SOLELY WITH RESPECT TO MATTERS ARISING UNDER THIS AGREEMENT, AND EACH WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY REGISTERED MAIL DIRECTED TO THE ADDRESS SET FORTH IN SECTION 9.05 HEREOF AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED UPON RECEIPT THEREOF. EACH PARTY HERETO HEREBY WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY OBJECTION BASED ON FORUM NON CONVENIENS, AND ANY OBJECTION TO VENUE OF ANY ACTION INSTITUTED HEREUNDER AND CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT. NOTHING IN THIS SECTION SHALL AFFECT THE RIGHT OF THE DEPOSITOR, THE PROGRAM MANAGER, THE PARTICIPATION AGENT AND THE LEGAL TITLE TRUSTEE TO SERVE LEGAL PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR AFFECT THE RIGHT OF ANY SUCH PERSON TO BRING ANY ACTION OR PROCEEDING IN THE COURTS OF ANY OTHER JURISDICTION.

(c)    EACH PARTY HERETO HEREBY WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE ARISING OUT OF, CONNECTED WITH, RELATED TO, OR IN CONNECTION WITH THIS AGREEMENT. INSTEAD, ANY DISPUTE RESOLVED IN COURT WILL BE RESOLVED IN A BENCH TRIAL WITHOUT A JURY.

Section 9.05    Notices. (a) All communications and notices to the parties hereto shall be in writing and delivered as follows:

If to the Legal Title Trustee, to:

> U.S. Bank National Association
> 60 Livingston Avenue
> EP-MN-WS3D
> St. Paul, Minnesota 55107
> Attention: Corporate Trust Services, Truman 2016 SC6 Title Trust

If to the Depositor, to:

> Truman 2016 SC6, LLC
> c/o Truman Capital Advisors, LP
> 200 Business Park Drive
> Suite 103
> Armonk, NY 10504
> Attention: Mitchell Samberg

If to the Program Manager or Beneficiary, to:

> Truman Capital Advisors, LP
> 200 Business Park Drive
> Suite 103
> Armonk, NY 10504
> Attention: Mitchell Samberg

If to a Servicer, to:

> Such Servicer at the address for such Servicer as shall be specified in the related Transfer Supplement with a copy to the Program Manager at the address provided above.

If to the Participation Agent under the Participation Agreement, to:

> U.S. Bank National Association
> 60 Livingston Avenue
> EP-MN-WS3D
> St. Paul, Minnesota 55107
> Attention: Corporate Trust Services, Truman 2016 SC6 Title Trust

or, in each case at such other address as the party may designate by notice to the other parties hereto, which notice shall be effective when received.

(b)     All demands, notices and communications hereunder shall be in writing and shall be effective: (a) upon delivery by hand or facsimile; (b) one day after being deposited with a nationally recognized overnight delivery service; (c) three days after being deposited in the United States mail, first-class, postage prepaid, registered or certified, return receipt requested, in each case addressed to such party as follows (or to such other address as hereafter may be designated in writing by such party to the other parties. Any such demand, notice or

communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee.

Section 9.06   Severability of Provisions.  If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement, and shall in no way affect the validity or enforceability of the other provisions of this Agreement or of the rights of the Participation Agent hereunder or of the parties hereto.

Section 9.07   Indulgences; No Waivers.  Neither the failure nor any delay on the part of a party to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence.  No waiver shall be effective unless it is in writing and is signed by the party asserted to have granted such waiver.

Section 9.08   Headings.  The headings contained in this Agreement are for convenience of reference only, and they shall not be used in the interpretation hereof.

Section 9.09   Beneficiaries.  (a)  This Agreement will inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns.  No other Person shall have any right or obligation hereunder, except to the extent specified in paragraph (b) of this Section 9.09.

(b)   Notwithstanding any provision herein to the contrary, the parties to this Agreement agree that it is appropriate, in furtherance of the intent of such parties as set forth herein, that each Servicer receive the benefit of the provisions of Section 7.02 hereof and of this Section 9.09 as an intended third party beneficiary of this Agreement to the extent of such provisions.  The Legal Title Trustee shall have the same obligations to any Servicer under Section 7.02 hereof as if such Servicer were a party to this Agreement, and each Servicer shall have the same rights and remedies to enforce the provisions of Section 7.02 hereof and this Section 9.09 as if such Servicer were a party to this Agreement.

Section 9.10   Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

Section 9.11   Confidentiality.

The Legal Title Trustee shall maintain a complete set of books of account and records relating to services performed hereunder, which books of account and records shall be accessible for inspection and copying by the Program Manager (at the expense of the Participants) upon reasonable prior notice during normal business hours.  The Legal Title Trustee agrees to keep confidential any and all information it obtains from time to time in connection with the Mortgage Assets, the Participations Interests, the Participants and this Agreement.  The Legal Title Trustee

shall take reasonable precautions to assure that any such confidential information is disclosed only to those of the Legal Title Trustee's personnel, agents or contractors who have a "need to know" such confidential information (and only to the extent necessary) in order to fulfill the purposes contemplated by this Agreement and who agree to abide by these provisions.

The Legal Title Trustee hereby acknowledges that each of the Participants, the Program Manager, the Participation Agent and their respective affiliates has a responsibility to its customers and employees, whether arising from or related to the Gramm-Leach-Bliley Act of 1999 and the rules and regulations promulgated thereunder or otherwise, to keep records and information relating to the Mortgage Loans, the REO Properties and the business of the Participants, the Program Manager, the Participation Agent and their respective affiliates confidential and proprietary. Therefore, the Legal Title Trustee agrees not to disclose, either directly or indirectly, to any Person information of any kind, nature or description concerning matters affecting or relating to the Mortgage Loans, the REO Properties or the business of the Participants, the Program Manager, the Participation Agent or their respective affiliates unless the information is already in the public domain or unless the Legal Title Trustee is required by law to disclose such information. This provisions shall survive the termination of this Agreement.

Section 9.12    No Petition. The Legal Title Trustee, by entering into this Agreement, and the Participation Agent on behalf of Participants, hereby covenant and agree that they will not at any time (i) institute against the Beneficiary, the Depositor or the Program Manager or join in any institution against the Beneficiary, the Depositor or the Program Manager of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations relating to this Agreement, the Participation Agreement or any related document, or (ii) cooperate with or encourage any other party to take any such action, until one year and one day after the date on which all amounts distributable pursuant to the Participation Agreement have been distributed.

[SIGNATURE PAGES TO FOLLOW]

IN WITNESS WHEREOF, the Depositor, the Program Manager, the Legal Title Trustee and the Participation Agent have caused their names to be signed hereto by their respective officers hereunto duly authorized as of the day and year first above written.

TRUMAN 2016 SC6, LLC,
as Depositor

By:  Truman 2016 SC6-1, LLC, its sole member

By:  Truman Capital Holdings 2012 SC2
Manager, LLC, its Managing Member

By: _William A Meeks_
Name: William A. Meeks
Title:  Treasurer

TRUMAN CAPITAL ADVISORS, LP,
as Program Manager

By: _William A Meeks_
Name: William A. Meeks
Title:  Treasurer

U.S. BANK NATIONAL ASSOCIATION,
 not in its individual capacity but solely as
 Legal Title Trustee of the Truman 2016 SC6
 Title Trust

By: _____
Name: Becky Warren
Title: Vice President


U.S. BANK NATIONAL ASSOCIATION,
 not in its individual capacity but solely as
 Participation Agent under the Participation
 Agreement

By: _____
Name: Becky Warren
Title: Vice President

Consented to by:

TRUMAN 2016 SC6, LLC,
    as Beneficiary

By:    Truman 2016 SC6-1, LLC, its sole member

        By: Truman Capital Holdings 2012 SC2
        Manager, LLC, its Managing Member


        By:  *William A Meeks*
            Name: William A. Meeks
           Title:  Treasurer

EXHIBIT A

FORM OF SECTION 404 NOTICE

NOTICE OF SALE OF OWNERSHIP OF MORTGAGE LOAN

Under federal law, borrowers are required to be notified in writing whenever ownership of a mortgage loan secured by their principal dwelling is sold, transferred or assigned (collectively, "sold") to a new creditor. This Notice is to inform you that your prior creditor has sold your mortgage loan (see loan information below) to the new creditor identified below.

**\*\*NOTE: The new creditor identified below is not the servicer of your loan. The servicer (identified below) acts on behalf of the new creditor to handle the ongoing administration of your loan, including the collection of mortgage payments. Please continue to send your mortgage payments as directed by the servicer, and NOT to the new creditor. Payments sent to the new creditor instead of the servicer may result in late charges on your loan and your account becoming past due. Neither the new creditor nor the servicer is responsible for late charges or other consequences of any misdirected payment.**

**SHOULD YOU HAVE ANY QUESTIONS REGARDING YOUR LOAN, PLEASE CONTACT THE SERVICER USING THE CONTACT INFORMATION SET FORTH BELOW. The servicer is authorized to handle routine inquiries and requests regarding your loan and, if necessary, to inform the new creditor of your request and communicate to you any decision with respect to such request. \*\***

Please note that the sale of your loan to us may also result in a change of servicer. If this occurs, you will receive a separate notice, required under federal law, providing information regarding the new servicer.

---

**LOAN INFORMATION**

Date of Loan:
Original Amount of Loan:
Date Your Loan was Sold to the New Creditor:
Prior Loan Number:
Current Loan Number:
Address of Mortgaged Property:

---

**SERVICER INFORMATION**

Name:
Mailing Address:
Telephone Number (Toll free):
Website:

Scope of responsibilities: The servicer is responsible for all ongoing administration of your loan, including receipt and processing of payments, resolution of payment-related issues, and response to any other inquiries you may have regarding your loan.

---

**NEW CREDITOR INFORMATION**

Please be advised that all questions involving the administration of your loan (including questions related to payments, deferrals, modifications or foreclosures) should be directed to the servicer at the number above and/or the agent (if any) of the new creditor identified below, and not to the new creditor. The new creditor does not have access to information relating to the

---

administration of your loan, and will not be able to answer most loan-related questions.

| | |
|---|---|
| Name: | U.S. Bank National Association, not in its individual capacity but solely as legal title trustee of Truman 2016 SC6 Title Trust |
| Mailing Address (**not for payments**): | 60 Livingston Avenue EP-MN-WS3D St. Paul, Minnesota 55107 |
| Telephone Number: | 1-800-934-6802 |

Scope of responsibilities: As new creditor, the above-named legal title trustee holds legal title to your loan for the related securitization trust. The legal title trustee for the securitization trust is authorized to receive legal notices and to exercise (or cause an agent on its behalf to exercise) certain rights of ownership with respect to your loan.

**AGENT INFORMATION** (If the new creditor has granted an agent other than the servicer authority to act on its behalf, contact information for such agent will appear below):

Name:
Mailing Address:
Telephone Number (Toll free):

Scope of responsibilities: Acts as agent for new creditor.

The transfer of the lien associated with your loan is, or in the future may be, recorded in the public records of the local County Recorder's office for the county or local jurisdiction where your property is located. Ownership of your loan may also be recorded on the registry of the Mortgage Electronic Registrations System at 1818 Library Street, Suite 300, Reston, VA 20190.

Our rights and obligations as new creditor, and consequently our authority to respond favorably to your requests or inquiries, may be limited by the terms of one or more contracts related to the securitization of your loan.

EXHIBIT B

FORM OF TRANSFER SUPPLEMENT

**TRUMAN 2016 SC6 TITLE TRUST**

Supplement No: _____                    Dated: _____

This TRANSFER SUPPLEMENT is made and delivered as of the date first above written by TRUMAN 2016 SC6, LLC, as depositor (the "Depositor") and TRUMAN CAPITAL ADVISORS, LP, as program manager (the "Program Manager") to U.S. BANK NATIONAL ASSOCIATION, as legal title trustee (the "Legal Title Trustee") and to U.S. BANK NATIONAL ASSOCIATION, as participation agent, under that certain Trust Agreement dated as of June 24, 2016 (the "Trust Agreement"), among the Depositor, the Program Manager, the Participation Agent and the Legal Title Trustee for the Truman 2016 SC6 Title Trust and in respect of the Mortgage Assets identified on Schedule I to this Transfer Supplement. The Depositor will also deliver a copy of this supplement to U.S. Bank National Association, as custodian (the "Custodian") under that certain master custodial agreement dated as of June 24, 2016, among the Depositor, the Legal Title Trustee, as an owner, the Program Manager and the Custodian.

1.  Schedule of Mortgage Assets. Attached hereto as Schedule I is the Schedule of Mortgage Assets (the "Schedule") conveyed by the Depositor to the Legal Title Trustee pursuant to Section 2.01 of the Trust Agreement and Section 3 of this Transfer Supplement.

2.  Information Relating to Mortgage Assets. The following terms as used in the Trust Agreement shall have the following meanings with respect to the Mortgage Assets identified on the Schedule to this Transfer Supplement.

    Cut-off Date: [_____]

    Cut-off Date Balance: [_____]

    Interim Servicer: [_____] [Not applicable]

    Interim Servicing Agreement: [_____] [Not applicable]

    Interim Servicing Period: [_____] [Not applicable]

    Interim Servicer Remittance Date: [_____] [Not applicable]

    Interim Servicer Reporting Date: [_____] [Not applicable]

    Mortgage Loan Purchase Agreement: [_____]

    Servicer(s): [_____]

760693-3-70 Truman 2016 SC6 Title Trust
Trust Agreement

B-1

Servicing Agreement(s): [        ]

Servicing Transfer Date: [        ] [Not applicable]

Transfer Date: [        ]

Transferor(s): [        ]

3. Conveyance of Mortgage Assets. In accordance with Section 2.01 of the Trust Agreement, the Depositor does hereby sell, transfer, assign, set over, deposit with and otherwise convey to the Legal Title Trustee, without recourse (except to the extent specified herein), all right, title and interest of the Depositor in and to each of the Mortgage Assets identified on the Schedule.

4. Incorporation by Reference; Ratification of Trust Agreement. As supplemented by this Transfer Supplement, the Trust Agreement is incorporated herein by this reference and is in all respects ratified and confirmed and the Trust Agreement as so supplemented by this Transfer Supplement shall be read, taken and construed as one and the same instrument.

5. Governing Law. THIS TRANSFER SUPPLEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Depositor and the Program Manager have caused this Transfer Supplement to be duly executed as of the day and year first above written.

TRUMAN 2016 SC6, LLC,
    as Depositor

By: _____
    Name:
    Title:

TRUMAN CAPITAL ADVISORS, LP,
    as Program Manager

By: _____
    Name:
    Title:

Accepted and agreed to by:

U.S. BANK NATIONAL ASSOCIATION,
not in its individual capacity but solely
as Legal Title Trustee of the Truman 2016 SC6 Title Trust

By: _____
    Name:
    Title:

U.S. BANK NATIONAL ASSOCIATION,
not in its individual capacity but solely
as Participation Agent

By: _____
    Name:
    Title:

SCHEDULE I TO TRANSFER SUPPLEMENT

ASSET SCHEDULE

