**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST,<br><br>PLAINTIFFS,<br><br>v.<br><br>ROBERT TED BROWN; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; AND INTERNAL REVENUE SERVICE,<br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 21-CV-00198-JJM-PAS |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, U.S. Bank, National Association, as legal title Trustee for Truman 2016 SC6 Title Trust, submits this memorandum in support of its motion for summary judgment pursuant to Rule 56 of the *Superior Court Rules of Civil Procedure*.

**INTRODUCTION**

The Defendant-Borrower, Robert Ted Brown, is indisputably in default of his mortgage payments and Plaintiff is entitled to foreclose pursuant to General Laws 1956 section 34-27-1, *et seq*. The following undisputed material facts are established by the pleadings and the Affidavit of Elizabeth Corral ("Lender Affidavit"), Default Fulfillment Manager of Carrington Mortgage Services, LLC, as attorney-in-fact for the Plaintiff submitted herewith.

**STANDARD OF REVIEW**

Pursuant to Rule 56(c) of the *Federal Court Rules of Civil Procedure*, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as matter of law." The purpose of summary judgment in

civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug. Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). A genuine dispute exists "if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party[,]" and a material fact exists "if it carries with it the potential to affect the outcome of the suit under the applicable law." *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). In ruling on a motion for summary judgment, the Court must examine the record evidence taken "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000) (internal citations omitted).

## ARGUMENT

Plaintiff is entitled to summary judgment authorizing a foreclose sale of the Mortgage pursuant to R.I. Gen. Laws § 34-27-1 because the Plaintiff holds the Note and Mortgage, the Borrower's breach of the Mortgage covenants is not in dispute, and equity favors Plaintiff's foreclosure of the subject Property. *See* R.I.G.L. § 34-27-1 (1938). As Judge Rubine noted in *Parra v. Mortg. Elec. Registration Sys., Inc.*, "[a] common sequence of events" in nonjudicial foreclosure sales often leads to an eviction, where a mortgagor might "take an appeal to the Superior Court where the question of the mortgagee's title may be determined *de novo*." *See* 2013 WL 1387030, No. PC 2011-1828 at *2 (R.I. Super. 2013). Such post-foreclosure challenges have become the norm in many instances, resulting in additional costs to the foreclosing owner to defend their title. In an attempt to avoid such a sequence of events, Plaintiff instead seeks finality on any title issues by means of obtaining a court order to foreclose. As such, this Court should grant summary judgment in favor of Plaintiff.

**1.  PLAINTIFF IS AUTHORIZED TO CONDUCT A FORECLOSURE OF THE PROPERTY BECAUSE PLAINTIFF IS THE HOLDER OF THE NOTE AND MORTGAGE.**

Plaintiff has held the Note and Mortgage since on or about June 29, 2017. *See Statement of Facts*, at ¶¶ 10-17, 21. In granting the Mortgage, the Borrower conveyed to Plaintiff, as the subsequent holder of the note, the right to foreclose and sell the Property, which "leave[s] no room for interpretation." *See Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1081 (R.I. 2013); *Statement of Facts,* at ¶ 4. Although the foreclosing entity need not hold both the mortgage and the promissory note, here, Plaintiff has shown that it is entitled to enforce both instruments. *See Ocwen Loan Servicing, LLC v. Medina*, 247 A.3d 140, 144-45 (R.I. 2021); *Statement of Facts*, at ¶ 21.

Borrower's first set of Affirmative Defenses assumes that the Note has been lost, but there is no evidence of this. *See Statement of Facts*, at ¶ 41(1)(a). Borrower also alleges, without any evidence, that the Note has not been properly endorsed, but the record mortgagee is deemed by law to be acting as an agent for the holder of the note. *See Bucci*, 68 A.3d at 1087; *Statement of Facts*, at ¶ 41(1)(b). An indorsement[1] in blank or to an identified person is merely a signature to give rights as a holder to a transferee. *See* R.I.G.L. §6A-3-205 (2000); *see also* U.C.C. §3-204, cmt. 1 (2022). General Laws § 6A-3-113 states: "An instrument may be antedated or postdated."

Here, the uncontested facts show that the Note originally made payable to New Century was endorsed prior to March 12, 2007 to Countrywide Bank, N.A. by an Assistant Manager of New Century. *See Statement of Facts*, at ¶ 10. Subsequently, the Note was endorsed to

---

[1] An indorsement "means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement." (R.I.G.L. § 6A-3-204(a) (2000)).

MEMO IN SUPPORT OF PL'S MOT. FOR SUMM. J.                    C.A. NO. 1:21-CV-00198-JJM-PAS

Countrywide Home Loans, Inc. by a Senior Vice President of Countrywide Bank. *See id.*, ¶ 11. The Note was then endorsed in blank by a Senior Vice President of Countrywide Home Loans. *See id.*, ¶ 12. All three indorsements were made either to the face or the back of the Note. *See id.* at ¶¶ 10-12. By indorsing in blank, the Plaintiff acquires the rights of a holder in due course based solely on possession of the Note. *See* R.I.G.L. §6A-3-302(a); *Statement of Facts*, ¶ 21.

The Borrower also claims that the assignment from MERS is void because New Century filed a Notice of Rejection of Executory Contract in March 19, 2008. Generally, the Borrower lacks standing to challenge the validity of this assignment unless he can prove that the assignment is "invalid, ineffective, or void." *See Mruk v. Mortg. Elec. Registration Systems, Inc.*, 82 A.3d 527, 536 (R.I. 2013) (quoting *Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282, 291 (1stCir. 2013)). MERS held the original mortgage on behalf of the original lender, its successors and assigns. When the assignment was executed, MERS was not acting on behalf of New Century, but on behalf of the then-holder of the note. MERS had the right to assign the mortgage on behalf of whoever held the note at the time that the assignment was executed, and this is a valid assignment under Rhode Island law. *See Rutter v. Mortg. Elec. Reg. Sys., Inc.*, 86 A.3d 381, 382-83 (R.I. 2014). A similar argument was made in *DiLibero v. Mortgage Electronic Registration Systems, Inc.* where the Rhode Island Supreme Court held that summary judgment was appropriate because New Century's bankruptcy filing was not competent evidence to invalidate the assignment from MERS. *See* 198 A.3d 1259, 1261-62 (R.I. 2019). Just as in *DiLibero*, New Century transferred the Note, in this case to Countrywide Bank, prior to rejecting its executory contract with MERS. *See id.* at 1260. Thus, at the time that the assignment was executed, New Century had no interest in the Note.[2] Moreover, there is no provision in the Bankruptcy Code that would

---

[2] In fact, New Century never had a record interest in the Mortgage.

support Borrower's claim that the Bankruptcy pleading "in any way affected [Borrower's] grant of authority to MERS to enforce the statutory power of sale contained in the mortgage." (*See Porter v. First NLC Fin. Servs. LLC*, No. PC 2010-2526, 2011 WL 1251246 (R.I. Super. Mar. 31, 2011) (Rubine, J.), *aff'd*, 140 A.3d 156 (R.I. 2016)). Therefore, Plaintiff is authorized to foreclose judicially because there is no genuine issue of material fact to contradict that Plaintiff holds the Note and Mortgage.

**2. PLAINTIFF HAS ACCELERATED THE NOTE BECAUSE IT STRICTLY COMPLIED WITH PARAGRAPH 22 OF THE MORTGAGE.**

Plaintiff is authorized to conduct a foreclosure because it has demonstrated strict compliance with the notice provisions contained in the Mortgage and Borrower remains in default of his payment obligations. The Rhode Island Supreme Court has held that "[a]s a matter of contract law, strict compliance with the requirements contained in paragraph 22 is a condition precedent to acceleration and a valid foreclosure sale." *Woel v. Christiana Tr.*, 228 A.3d 339, 345 (R.I. 2020). In *Woel*, the Court reasoned that the failure to strictly comply with the pre-foreclosure notice requirements contained in the paragraph could mislead the mortgagors "into thinking that they had no need to initiate a lawsuit against the mortgagee or could instead advance a claim or defense in response to a lawsuit initiated by the mortgagee." *Id.* at 346.[3] More recently, in *Degasparre*, the Supreme Court distinguished a valid notice in strict compliance with Paragraph 22 from the invalid notice in *Woel*. 288 A.3d 146, 153-54 (R.I. 2023). There, the subject notice contained all four elements of the contract: "(1) the breach; (2) the action required to cure such breach; (3) a date *** by which such breach must be cured; and (4) that failure to cure such breach *** may result in *** sale of the [p]roperty." *Id.* at 155.

---

[3] The *Woel* Court involved a non-judicial foreclosure sale and did not rule on the issue of whether strict compliance applies in the judicial foreclosure setting.

Here, the Borrower was properly notified of the default at his last known address, being the subject Property. *Statement of Facts*, at ¶ 19. The Default Notice: (1) identifies the breach "for failure to pay amounts due[;]" (2) the action required to cure "pay the full amount of the default…"; (3) a date of May 22, 2017 to cure the default; and (4) that failure to cure "the default on or before this date may result in acceleration … foreclosure by judicial proceeding where applicable, and sale of the property." *See Degasparre*, 288 A.3d at 155; *Statement of Facts*, at ¶ 20. The Default Notice also includes notice of "the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." *See Woel*, 228 A.3d at 346; *Statement of Facts*, at ¶ 20. Just as in *Degasparre*, "there is no indication that the default notice misinformed or misled [the borrower] as to any of his rights in advance of foreclosure." *See* 288 A.3d at 154.[4] As a result, the Note was accelerated because the Borrower failed to cure the default. *See Statement of Facts*, at ¶ 22. While there is no contractual notice provision required to accelerate the Note, one was mailed in June 2017. *See Faria v. Citizens Bank, N.A.*, 569 F.Supp.3d 92, 97 (D.R.I. Oct. 28, 2021) ("The language—'without further demand'—makes clear that a subsequent notice of acceleration is not contractually required.")

While the Borrower alleges that the arrearage is not authorized by the loan, the Mortgage terms only require that the amount to cure be specified. (*See Statement of Facts*, at ¶ 41(3); *U.S. Bank Nat'l Ass'n as Tr. for Residential Asset Securities Corp. v. Torres*, 559 F.Supp.3d 62, 66-67 (D.R.I. Sept. 13, 2021) ("The fact that additional amounts required for reinstatement might be owed did not diminish or contradict that the amount of the default was specified."). The Note and Mortgage allow for these charges. *See Statement of Facts*, at ¶¶ 1, 3, 14, 22. The Mortgage provides

---

[4] Just as in *Degasparre*, the Default Notice varies slightly from the contractual language when it states that failure to cure may result in "foreclosure by judicial proceeding where applicable, and sale of the property." *Compare* 288 A.3d at 154 *with Statement of Facts*, at ¶ 20. However, the Supreme Court did not view this lack of precise terminology to result in failure to strictly comply with the terms of the mortgage. *See id.*

specific provisions that allow a Lender to charge principal, interest, Escrow Items, and Late Charges. *Statement of Facts*, at ¶ 5. Certain loan charges are also permitted "for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." *Id.* at ¶ 8. The Mortgage also permits Plaintiff to "collect all expenses incurred in pursuing the remedies provided in [acceleration and enforcing the statutory power of sale], including, but not limited to, reasonable attorneys' fees and costs of title evidence." *Id.* at ¶ 9. Even assuming, *arguendo*, that some inaccuracies exist in the loan charges, this would not prevent Plaintiff from enforcing its mortgage and can be resolved after foreclosure sale in calculating surplus proceeds, if any. Therefore, this Court should authorize Plaintiff to foreclose because there is no genuine issue of material fact that Plaintiff strictly complied with the Paragraph 22 of the Mortgage.

**3.   NONE OF BORROWER'S REMAINING AFFIRMATIVE DEFENSES PRESENT A GENUINE ISSUE OF MATERIAL FACT TO DEFEAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.**

Finally, this Court should authorize judicial foreclosure by public sale because none of Borrower's remaining Affirmative Defenses present a genuine issue of material fact to overcome summary judgment. Affirmative Defenses 1-5, 7-8, 10, 13-15, 17, and 22-23 have been addressed in the first section showing that there is no dispute that Plaintiff holds the Note and Mortgage. Affirmative Defenses 6, 9, 11-12, and 18-19 were addressed in the second section showing that Plaintiff strictly complied with Paragraph 22 of the Mortgage. What remains is the first half of Affirmative Defense 19, alleging that Plaintiff violated the Mediation Statute, R.I.G.L. § 34-27-9 when it mailed notices of sale; Affirmative Defenses 20-21, alleging that Plaintiff violated TILA for failure to provide periodic mortgage statements, Affirmative Defenses 24 and 27 for allegedly violating the FDCPA; Affirmative Defense 25, alleging that the Plaintiff has not complied with

7

Rule 7.1 of the Rules of Civil Procedure; and Affirmative Defense 26 which claims that the Rhode Island Division of Taxation and the Town of West Greenwich must be named as defendants in this action. Each of these fail to create a genuine issue of material fact for the reasons stated below.

**(a) *The Mediation Statute is inapplicable in a judicial foreclosure action, pursuant to R.I.G.L. § 34-27-1, because the plain, unambiguous language specifically exempts Plaintiff under R.I.G.L. § 34-27-9(d)(5).***

The Mediation Statute was initially enacted in 2013 under Section 34-27-3.2 and has seen a few revisions to other portions of the text in 2014, 2015, and 2018. On June 26, 2024, Section 34-27-3.2 and the older Foreclosure Conciliation Statute, Section 34-27-3.1, were repealed and replaced with the new Section 34-27-9, which currently mirrors the 2018 version of Section 34-27-3.2. Despite these revisions, the judicial foreclosure exemption has remained intact under the current version of Section 34-27-9. *See* R.I.G.L. § 34-27-9(d)(5) ("Notwithstanding any other provisions of this section, a mortgagee may initiate a judicial foreclosure in accordance with § 34-27-1.") Section 34-27-1, on the other hand, was enacted in 1896 with the most recent revision dating back to 1938, and provides that "[a]ny person entitled to foreclose the equity of redemption in any mortgaged estate, whether real or person, *may prefer a complaint to foreclose it*, which complaint may be heard, tried, and determined according to the usages in chancery and the principles of equity." *See* R.I.G.L. § 34-27-1 (emphasis added). The plain, unambiguous language of the Mediation Statute clearly gives mortgagees the unrestricted option to seek foreclosure of the equity of redemption in a court setting. *See Id.* Therefore, the Borrower's 19th Affirmative Defense does not create a genuine issue of material fact because the Mediation Statute is inapplicable.

**(b) *The Borrower has not alleged any material facts to assert a defense under TILA or FDCPA.***

Despite the conclusory allegations that Plaintiff violated TILA for failure to provide periodic mortgage statements and the FDCPA by filing the complaint, the Borrower cannot provide any competent evidence. To the contrary, Plaintiff's prior servicers have mailed each monthly statement to either the Property or Borrower's counsel. *See Statement of Facts* at ¶¶ 36-37. Although it has recently come to light that the Borrower may have actually resided in South Carolina since 2019, he never contacted Plaintiff's loan servicer to change his mailing address. *See id.* at ¶¶ 38-39. Likewise, the facts show that Plaintiff's prior counsel mailed an initial letter giving Borrower the opportunity to dispute the validity of the debt, pursuant to the FDCPA, in June 2017. *See id.* at ¶ 22.

Even if the Borrower could plausibly allege the existence of a violation under either statute, this Court would be obliged to dismiss the claim for failure to plead actual damages sufficient to invoke Article III jurisdiction. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549-50 (2016).

### (c) *Plaintiff has complied with Rule 7.1 of the Rules of Civil Procedure because Plaintiff was a New York Common Law Trust at the time of filing the complaint.*

At the time of filing the complaint on May 4, 2021, the Plaintiff was organized as a New York common law trust, as clearly indicated under Section 1.1 of the Second Amended and Restated Trust Agreement dated February 26, 2021. *See Statement of Facts* at ¶ 26. Alternatively, the Borrower's invocation of TILA and the FDCPA as Affirmative Defenses has established original jurisdiction as a Federal Question.

The amended Rule 7.1 requires a party or intervenor to file a disclosure statement naming and identifying the citizenship of "every individual or entity whose citizenship is attributed to that party or intervenor: (A) when the action is filed in or removed to federal court, and (B) when any later event occurs that could affect the court's jurisdiction under § 1332(a)." *Fed. R. Civ. P. 7.1*.

The purpose of the 2022 amendment was to "facilitate an early and accurate determination of jurisdiction." *See Fed. R. Civ. P. 7.1, cmt 2022 Am.* Generally, diversity jurisdiction is determined at the time of filing the complaint, except "[w]here there is inadequate evidence adduced to establish the location of a corporation's principal place of business…" *See Media Duplication Svc, Ltd. V. HDG Software, Inc.*, 928 F.2d 1228, 1236 (1st Cir. 1991) *(citing O'Toole v. Arlington Trust Co.,* 681 F.2d 94, 98 (1st Cir.1982)).

Unincorporated entities, such as real estate investment trusts, may require information pertaining to the individual shareholders if the "shareholders have 'ownership interests' and votes in the trust by virtue of their 'shares of beneficial interest.'" *See Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 382 (2016) (quoting Md. Corp. & Assns. Code Ann. §§8-704(b)(5), 8-101(d)). A "traditional" trust, however, "takes the citizenship of its trustee," rather than each of its individual beneficiaries. *See BRT Management LLC v. Malden Storage LLC*, 68 F.4th 691, 697 (1st Cir. 2023) (*citing GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 39 (3d Cir. 2018))."To determine whether a trust is traditional, courts have looked to whether it can sue and be sued, and the extent to which it is otherwise treated as a juridical person under state law." *Id.* (*citing Americold*, 577 U.S. at 382).

Here, the Supplemental Rule 7.1 Statement discloses that Truman 2016 SC6 Title Trust was a New York Common Law Trust, pursuant to the Second Amended Trust Agreement, with US Bank National Association appointed as Legal Title Trustee. *See ECF 22*, at ¶¶ 1-2. Section 9.04 of the Second Amended Trust Agreement makes clear that its governing law is with the State of New York. *See* ECF 27. The Legal Title Trustee continues to hold the Trust Fund for the Beneficiary and the Trust Participants and is not intended to operate as a "business trust" within the meaning of the New York General Associations Law nor the United States Bankruptcy Code.

*See id.* at § 2.01(a), (h). The Depositors retain no rights or interest in the Trust Fund. *See id.* at § 2.01(c). The Legal Title Trustee may act at the instruction of the Participation Agent but is not obligated to act at its instruction when reasonably determined that such action is likely to result in liability or is contrary to the terms of any Basic Document or otherwise contrary to law. *See id.* at § 4.02 (a)-(b).

A New York Common Law Trust ; *see also U.S. Bank, Nat'l Assoc. v. UBS Real Estate Sec. Inc.*, 205 F.Supp.3d 386, 408-09 (S.D.N.Y. Sept. 6, 2016) ("Only the Trustee and not the Trusts could bring this action. The original allegation that the suit is brought by the Trusts 'acting through the Trustee,' is of equivalent meaning to the Trustee suing solely in its capacity as Trustee of the Trusts. Both convey that the Trustee is acting for the Trusts in bringing the action. Further, the citizens of U.S. Bank, as Trustee is controlling for the purposes of the diversity analysis."). Unlike the Maryland investment trust at issue in *Americold*, which was authorized to sue or be sued, 'under New York law, a trust cannot sue or be sued, and suits must be brought by or against the trustee." *Springer v. U.S. Bank Nat'l Assoc.*, No. 15-cv1107(JGK), 2015 WL 9462083, at \*2 n.1 (S.D.N.Y. Dec. 23, 2015); *see also U.S. Bank Nat'l Assoc. v. 2150 Joshua's Path, LLC*, No. 13-cv-1598(DLI)(SIL), 2017 WL 4480869 at \*3 (E.D.N.Y. Sept. 30, 2017). Even if the Trust were organized under Delaware, rather than New York, diversity would still exist because the Trustee solely holds the power of supervision and direction of the Trust Funds. *See ECF 27* § 4.02 (b); *see also U.S. Bank, N.A., Tr to Bank of America, Nat'l Assoc. v. Taslis*, 779 F.Supp.3d 71, 79 (D.Mass. Apr. 11, 2025) ("Plaintiff argues in further response, persuasively, that the servicer administers the mortgage loans owned by the trust under the supervision and direction of the trustee, as evidenced by the fact that the servicer requests the mortgage files from the trustee in certain circumstances.").

Therefore, diversity jurisdiction is proper in this case because no party shares the same state with the Plaintiff's Legal Title Trustee.

Alternatively, the Borrower's affirmative defenses invoking TILA and FDCPA invoke the Court's federal question jurisdiction because they seek statutory damages under 15 USC 1638(f). *See Belini v. Washington Mut. Bank, FA*, 412 F.3d 17, 27 (1stCir. 2005).

**(d) The Rhode Island Division of Taxation and Town of West Greenwich are not necessary parties in this judicial foreclosure action because they have no recorded interest in the Property.**

Finally, neither the Rhode Island Division of Taxation nor the Town of West Greenwich are necessary parties to this judicial foreclosure action because they have no recorded interest in the Property. The Rhode Island Supreme Court in interpreting the judicial foreclosure statute set forth the process:

> …upon initiation of judicial foreclosure proceedings, the court first determines whether the mortgagee is entitled to foreclose the mortgage. If foreclosure is appropriate, the court then oversees the conduct and process of the foreclosure sale.

*Ocwen Loan Servicing, LLC v. Medina*, 247 A.3d 140, 144 (R.I. 2021). Absent a recorded interest, neither the Tax Division nor the Town of West Greenwich can be perceived as necessary parties because the foreclosure will not affect them. Indeed, Plaintiff's foreclosure will not affect the Tax Division's tax authority over the Borrower nor the Town's right to collect real estate taxes after the sale.

## CONCLUSION

This Court should authorize Plaintiff to foreclose because the Borrower is indisputably in default of their mortgage payments, the Plaintiff is entitled to foreclose its Mortgage, and equity

12

favors foreclosure in this case. Finally, the Court should dismiss Mr. Brown's affirmative defenses because he cannot provide any competent evidence to support a genuine issue of material fact.

WHEREFORE, Plaintiff requests that this Court grant its motion for summary judgment authorizing foreclosure of the subject property and dismissing Mr. Brown's affirmative defenses.

Respectfully submitted,
PLAINTIFF
by its attorneys,

/s/ Rowdy M. Cloud
Rowdy M. Cloud, Esq. (#9383)
Brock and Scott, PLLC
23 Messenger Street, Second Floor
Plainville, MA 02762
(508) 379-4516

DATE: December 1, 2025