UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

U.S. BANK TRUST NATIONAL ASSOCIATION
AS LEGAL TITLE TRUSTEE

FOR TRUMAN 2016 SC6 TITLE TRUST

VS                                          21-CV-00198-JJM-PAS

ROBERT TED BROWN ET AL

OBJECTION TO ORDER OF MAGISTRATE JUDGE ON MOTION TO
COMPEL DISCLOSURE COMPLIANCE WITH FEDERAL RULE OF CIVIL
PROCEDURE 7.1 AS AMENDED  PURSUANT TO FRCP 72 AND LOCAL
RULE 72 WITH INCORPORATED MEMORANDUM OF LAW

Defendant  objects to the Ruling of the Magistrate Judge on the Motion to

Compel Compliance pursuant to Local Rule 72 and FRCP 72. This Court has

extended the time to file this Objection to June 9, 2026. The objections are

specified in this Objection and Memorandum. This Order is attached to this

Objection. The original filing in this case contained  purported compliance with

FRCP 7.1 as it was then in effect and stated:

Now comes the Plaintiff, U.S. Bank National Association, as Legal Title Trustee
for Truman 2016-SC6 Title Trust and, pursuant to Fed. R. Civ. P. 7.1, states as
follows:

1

1. U.S. Bank National Association, as Legal Title Trustee for Truman 2016-SC6 Title Trust is a national banking association incorporated under the law of the United States under the National Bank Act.

2. U.S. Bank, N.A. has a parent company that is publicly traded, Roosevelt Management Company, LLC.

3. There is no publicly held company that owns more than 10% or more Roosevelt Management Company, LLC's stock.

Plaintiff filed an Amended FRCP 7.1 statement on April 24, 2024,whicht did not comply with FRCP 7.1, which requires that whenever the corporate status of a party changes, a Supplemental 7.1 disclosure form must be filed. The amended version of Fed. R. Civ Pro.7.1 required this Plaintiff, an unincorporated Delaware Statutory Trust to make additional disclosures.

Attached to the Defendant's Motion was Exhibit A, which is a record from the State of Delaware, Division of Corporations, which indicates that the Plaintiff, Truman 2016 SC6 Title Trust is a Delaware Statutory Trust and  Exhibit B, which is a copy of the Trust Agreement of the Truman 2016 SC6 Title Trust, which is an unincorporated association.  This trust agreement references a Participation Agreement and the powers of Participants in this Trust Agreement.  These other entities have virtually unlimited power over the trustee. The definitions and the Trust Agreement contain terms which indicate that the Trustee does not possess the power to sue or be sued on behalf of the Trust. The Beneficiary is defined in the Preliminary Statement hereto and is the Depositor of the loans into this Trust.

2

Participants are defined in the Participation Agreement and the Participation Agent is U.S Bank, National Association as Trustee.

The Participation Agreement is defined as:

That certain master participation agreement to be dated as of June 24, 2016, among the Legal Title Trustee for the Trust, the Depositor, the Program Manager, and the Participation Agent, as such may be amended by the parties thereto from time to time.

This agreement controls the terms of this Trust, not the Title Trustee. The Trust Agreement specifically states that:

The purpose of the Trust is to hold, protect and preserve the Trust Fund for the benefit of the Beneficiary and the Participants and not to carry on or transact business.

The Trust Agreement specifically states that:

The equity owner of the Trust shall be the owner or owners of any outstanding Participation interests. The Trust contains the following definitions:

Participation Interest: As defined in the Participation Agreement.

Participation Interest Account: As defined in the Participation Agreement.

Program Manager: Truman Capital Advisors, LP, or any successor in interest.

The Trust Agreement specifically states that the Legal Title Trustee and the Program Manager shall enter into the Participation Agreement with U.S. Bank National Association, in its capacity as Participation Agent, pursuant to which a Participation Interest will be created in respect of each Mortgage Asset.

The Trust Agreement does not provide the Legal Title Trustee any authority to file suit or be sued on behalf of the Trust. The Trust Agreement indicates that this Trust is an unincorporated legal entity.

Defendant filed discovery including discovery regarding Jurisdicton, which Plaintiff have failed to comply with and which Defendant is filing a Motion for Sanctions and for a Default Judgment. Judge Sullivan in her text Order compelling production of documents specifically ordered Plaintiff to provide certain documents to establish diversity jurisdiction:

**with respect to Requests 15, 40, 41 and 60, Plaintiff shall produce documents sufficient to show the citizenship of Plaintiff for purposes of establishing diversity jurisdiction**

Plaintiff filed nonresponsive supplemental responses contrary to the Court Order.

It did not provide any response which showed diversity as to Request 15, which sought Copies of an executed copy of the Trust Agreement for any securitized trust which has ever held Defendant's loan, including the Loan schedules. After the Order requiring the production Plaintiff continued its objections, which will be addressed in Defendant's Motion. If this Rule 7.1 Motion is granted and diversity is not established, this Court will lack jurisdiction as to all issues in the case.

4

## SPECIFIC OBJECTIONS OF DEFENDANT

The Defendant objects specifically to these findings of the Magistrate Judge

1. The Magistgrate Judge found that at the time of filing this case that the Trust was a New York Common Law Trust.

2. The Magistrate Judge found that the original FRCP 7.1 disclosure statement only stated that U.S. Bank National Association was a National Banking Association with a publicly traded parent with no reference to the fact that it also asserted:

   U.S. Bank, N.A. has a parent company that is publicly traded, Roosevelt Management Company, LLC.

   There is no publicly held company that owns more than 10% or more Roosevelt Management Company, LLC's stock.

3. The Magistrate Judge disregarded the holding of *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980), which held that a trustee without actual power was a sham trustee, whose citizenship was to be disregarded when considering diversity.

4. The Magistrate Judge did not take into consideration that she had ordered the Plaintiff to comply with the Request for Production, which contained requests for

the Participation Agreement and other documents which indicated that the Trustee lacked any power.

5.    The Magistrate Judge found that the Trustee had the power to sue and be sued, without any support in the record for that finding.

6.    The Magistrate Judge found that this Motion was a discovery device when the Defendant has already requested jurisdictional discovery which has not been complied with by Plaintiff despite the Magistrate Judge's Order.

7.    The Magistrate Judge's Order was clearly erroneous and contrary to law.

## ARGUMENT

A plaintiff must have the legal right and power to sue at the exact moment the complaint is filed. Since the original trust agreement did not grant the Trustee the power to sue, the Trustee lacked standing on Day One. Under New York law, a plaintiff cannot file a lawsuit with "zero standing" and then cure that defect later through an amendment. The plaintiff is trying to use New York statutory law (such as New York EPTL § 11-1.1, which grants generic powers to fiduciaries) to override the Trust Agreement. However, the trust agreement's specific restrictions control and limit the  trustee's powers. More importantly, since it switched the trust character to a Delaware Statutory Trust (DST), it can no longer claim New York statutory powers apply to the entity's fundamental

6

governance. Federal Rule of Civil Procedure 17(a) strictly commands that an action must be prosecuted in the name of the real party in interest. The mere assertion of being a "New York trust" completely crumbles when confronted with the introduction of a Participation Agent and multiple other entities with power over the Trustee. The Trust indicates that a third-party Participation Agent holds the actual economic stake and directs the litigation choices, the purported  New York trust is operating as a mere nominal anchor—a textbook "sham" configuration used to deceptively manufacture diversity jurisdiction. Plaintiff's mere assertion that it is a New York trust is a distinction without a difference and cannot defeat Defendant's jurisdictional challenge. Federal courts consistently hold that form does not triumph over substance when evaluating subject-matter jurisdiction.

Under *Navarro*, the controlling question is not what the entity calls itself under state law, but whether the Trustee possesses the independent, customary fiduciary power to manage the litigation. Because the trust instrument here stripped the Trustee of day-one authority to sue, and because a third-party Participation Manager controls the debt, the Plaintiff is a nominal A trustee cannot initiate a lawsuit without explicit contractual

authority, rely on a New York statute for power, and then retroactively transform the trust into a Delaware Statutory Trust before serving the defendant; this creates an incurable defect in standing and capacity that justifies a dismissal

Plaintiff amended its trust agreement and there is a participation manager mentioned in the trust. The introduction of a "Participation Manager" into the amended trust agreement strongly indicates that the original plaintiff (the trust) does not actually own the note and mortgage. Instead, they have likely entered into a loan participation agreement, which splits the *economic ownership* of the loan from the *legal title*.

In debt and foreclosure litigation, this is a massive vulnerability for the Plaintiff. It means the Trustee and Trust are acting as a shell or a front for a third-party investor who is actually pulling the strings.. In a loan participation, a lead financial institution sells shares (participations) of a loan to other investors. The "Participation Manager" is hired to oversee those investors' interests and manage the cash flows. The Plaintiff is trying to claim it is the "Real Party in Interest" with standing to sue the Defendant However, the presence of a Participation Manager proves that a separate, entity holds the actual financial stake and the right to direct the litigation.

Under both New York law and Delaware Statutory Trust (DST) law, a plaintiff must have a concrete, direct stake in the outcome of the lawsuit to have standing.  If the trust agreement initially included a Participation Manager, it implies the trust sold off its financial risks and rewards to third-party participants.  If the trust does not suffer the direct financial loss from your alleged default—because that loss is borne by the participants managed by the Participation Manager—the trust may completely lack standing to bring this action in this Court.

The Plaintiff alleges that it was originally a New York Trust relying on a New York statute (which grants broad powers to fiduciaries) to justify filing suit because the Trust does not allow it to file suit.  The Participation Manager completely destroys that argument as New York courts consistently hold that general statutory powers cannot override specific limitations inside a trust agreement. If the agreement requires the consent, direction, or management of a "Participation Manager" to take legal action, the Trustee cannot bypass that contract by pointing to a generic state law.

The Plaintiff is a mere nominal party (a placeholder) and that the true owners of the debt—the participants represented by the Manager—have failed to join the lawsuit as required by court rules. Plaintiff filed a suit when it had no

authority to file, mutated the trust into a Delaware entity, with a Participation Manager controlling the Trustee. This Participation Manager strongly implies the trust split its ownership of the debt via a participation scheme; this means the Plaintiff is likely a nominal shell lacking the actual financial injury required for standing and is bound by complex internal rules that defeat its reliance on general statutory framework. In New York, the foundational principle of trust law is that the trust agreement itself is the supreme law of the trust, and statutory default powers are strictly subordinate to the explicit intentions and restrictions written into the instrument by the settlor with the Trustee being a sham placeholder under federal law, requiring immediate dismissal.

The plaintiff is trying to use New York statutory law to override the Trust document. However, a trust agreement's specific restrictions generally control and limit a trustee's powers. More importantly, since the entity switched shortly after filing this action to a Delaware Statutory Trust (DST), it can no longer claim New York statutory powers apply to the entity's.

Under the doctrine established under *Navarro v. Lee*, 446 US 458, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980), since a trustee lacks active, independent operational control over the trust assets and the litigation, that trustee is considered a nominal party whose individual citizenship must be completely ignored for federal

jurisdiction purposes.  Other Supreme Court and Federal cases have followed suit for diversity determinations.

In *Carden v. Arkoma Associates*, 494 US 185, 191-192 (1990), the Supreme Court restated the Navarro test and the principal that the real party in interest with power would determine diversity. The Supreme Court reversed the Fifth Circuit and held:

> we did indeed discuss the characteristics of a Massachusetts business trust — not at all, however, for the purpose of determining whether the trust had attributes making it a "citizen," but only for the purpose of establishing that the respondents were "active trustees whose control over the assets held in their names is real and substantial," thereby bringing them under the rule, "more than 150 years" old, which permits such trustees "to sue in their own right, without regard to the citizenship of the trust beneficiaries." *Id.,* at 465-466. *Navarro,* in short, has nothing to do with the *Chapman* question, except that it makes available to respondent 192*192 the argument by analogy that, just as business reality is taken into account for purposes of determining whether a trustee is the real party to the controversy, so also it should be taken into account for purposes of determining whether an artificial entity is a citizen.

. In  *BRT Management, LLC v. Malden Storage, LLC,* 68 F.4th 691 (First Cir., 2023), the First Circuit required a remand where there was no compliance with Amended Rule 7.1and discovery was authorized regarding diversity jurisdiction. . In In  *BRT Management LLC v. Malden Storage LLC*, 68 F.4th 691 (1st Cir. 2023)  the First Circuit  directly addressed situations where a trust's management structure splits control away from the nominal entity. It notes that

when a separate management tier or contractual layer controls the asset, the nominal party's citizenship is highly suspect for diversity evaluation. The First Circuit cited *Americold Realty Trust v. Conagra Foods*, 136 S. Ct. 1012 (2016), in which the Supreme Court held that the citizenship of unincorporated associations are to be determined by their members:

Despite our oft-repetition of the rule linking unincorporated entities with their "members," we have never expressly defined the term. But we have equated an association's members with its owners or "`the several persons composing such association.'"

As the amended Rule 7.1 reflects, diversity jurisdiction turns on the citizenship of not just each party, but all individuals and entities attributable to each party.  The real parties in interest,  the participants of the non-disclosed participation Agreement,must disclose the citizenship of their identity and state of domicile. No such disclosure has occurred in this case. *BRT* noted the following diversity issues regarding trusts:

As the Supreme Court has explained, sometimes a trust is treated like an unincorporated association, taking as its citizenship the citizenship of its members. *Americold Realty Tr*., 577 U.S. at 382, 136 S.Ct. 1012. In Americold, the Court attributed "confusion" regarding trust citizenship to "tradition," because "[t]raditionally, a trust was not considered a distinct legal entity, but a `fiduciary

relationship' between multiple people," so "proceedings involving a trust were brought by or against the trustees in their own name[s]," and accordingly the trustees' citizenships were the ones that mattered. Id. at 383, 136 S.Ct. 1012. But because states "have applied the `trust' label to a variety of unincorporated entities" that can sue or be sued, those entities "possess[] the citizenship of all [their] members." Id. Many circuit courts have interpreted this language to mean that a "traditional" trust — one that "exists as a fiduciary relationship and not as a distinct legal entity" — takes the citizenship of its trustee, while a trust which does exist as a separate legal entity takes the citizenship of all its members. . . . To determine whether a trust is traditional, courts have looked to whether it can sue and be sued, and the extent to which it is otherwise treated as a juridical person under state law. . . . Defendants have not provided this information, thus precluding us from even trying to determine how to treat their trusts. Nor have defendants provided information about the trusts' beneficiaries or members (however defined) that might moot any need to determine whether it is necessary to look beyond the citizenship of 698*698 the trust or its trustees.

*BRT Management* at pp.607-698.

In this case, the Magistrate Judge did not require the Plaintiff to provide information as required by Navarro and BRT and Americold.

In *Wells Fargo Bank Northwest, N.A. v. Synergy Aerospace Corp.*, No. 16-CV-8065 (S.D.N.Y. Aug. 7, 2017), the Court directly applied *Navarro* to evaluate whether a corporate trustee was a "real and substantial party" or a mere "sham." The court affirmed that under *Navarro*, if a trustee is an empty legal shell who holds no genuine, active power to control or manage the trust property independently, it is a sham trustee. In *Synergy*, the Court followed *Navarro* and

13

reviewed the Trust document, which is is different  from the purported Trust in this case and found that it possessed actual power under the Trust document.The Court in *Synergy* held:

> However, "[i]t is firmly established that 'citizens' for purposes of a federal court's diversity jurisdiction 'must be real and substantial parties to the controversy.'" Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003) (quoting Navarro, 446 U.S. at 460). A court may not rest its diversity jurisdiction on the citizenship of a "'naked trustee' who act[s] as [a] 'mere conduit[]' for a remedy flowing to others." Navarro, 446 U.S. at 465 (quoting McNutt v. Bland, 43 U.S. 9, 13 (1844)). "If a trustee is truly a naked trustee, the trust's beneficiaries are the real parties to the controversy, and their citizenship will control for diversity purposes." Cortlandt St. Recovery Corp. v. Aliberti, No. 12 Civ. 8686, 2014 WL 6907548, at *2 (S.D.N.Y. Dec. 9, 2014) (quoting 6 Wells Fargo Bank, N.A. v. Ullah, No. 13 Civ. 0485, 2014 WL 470883, at *3 (S.D.N.Y. Feb. 6, 2014)). But "[w]here a trustee brings the action in her own name, and where she is a bona fide trustee, she is entitled to rely on her own citizenship for diversity purposes." Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2007-1 ex rel. HSBC Bank USA v. Nomura Credit & Capital, Inc., 27 F. Supp. 3d 487, 490 (S.D.N.Y. 2014).3 A trustee is a real party to the controversy where it "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." Navarro, 446 U.S. at 464; see also Dodge v. Tulleys, 144 U.S. 451, 455 (1892) (holding that the "trustee, to whom the legal title was conveyed in trust, . . . was therefore the proper party in whose name to bring suit"); Nomura, 27 F. Supp. 3d at 492 ("Where the action is brought in the name of the trustee, **courts must inquire** into whether the trustee is more than just a 'sham' who has no real power to control the litigation or the property at issue." (citing Navarro, 446 U.S. at 465)). "Whether the trustee possesses such powers is a question that is resolved based on the underlying trust document." U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC, 859 F. Supp. 2d 602, 606 (S.D.N.Y. 2012). *Synergy* at p. (emphasis added)

*Synergy* led to a different result than this case because the Court examined the Trust documents and found that it possessed the power to sue, which is not present in this case.

14

The initial Trust Agreement referenced a Participation Agreement which impacted the powers of the Trustee and indicated that US Bank was trustee, Participation Agent and Custodian and that the Program Manager and beneficiaries also possessed powers which diminished the powers of the Trustee. Nowhere in Exhibit B is the Trustee provided the power to file suit on behalf of the Trust or beneficiaries. As a result pursuant to *Americold,* diversity can only be determined by the citizenship of the beneficiaries of this Delaware statutory trust. Pursuant to the holding of the First Circuit in *BRT Management, LLC v. Malden Storage, LLC,* 68 F.4th 691 (First Cir., 2023), the Plaintiff has not complied with Fed. R. Civ. Pro. 7.1 and has not disclosed the identity of all the participants in the Participation Agreement in this purported trust.

*Navarro*, *Carden* and *Americold* and the First Circuit in *BRT Management* require an analysis of  the Trust Document to determine the actual power of the Trustee.  An analysis of this Trust indicates that US Bank is a naked trustee. strongly indicate that the Legal Title Trustee holds virtually no independent powers and acts purely as a passive entity. The  trustee's limited, non-independent role is demonstrated by the text of the Trust Agreement, which explicitly names the trustee as:

15

*"U.S. BANK NATIONAL ASSOCIATION... not in its individual capacity, but solely as legal title trustee."*

This is standard industry language for a **"naked"** or passive title-holding trust. It means U.S. Bank does not own the assets personally, nor does it control them. It exists solely to hold the technical legal name on the titles (the mortgages and deeds) for the benefit of others. The agreement separates the parties into strict roles:

The Depositor/Beneficiary**:** *Truman 2016 SC6, LLC* (The entity that owns the economic value of the mortgages).

The Program Manager**:** *Truman Capital Advisors, LP* (The entity explicitly hired to manage and direct the business policies of the trust).

The Legal Title Trustee**:** *U.S. Bank* (The entity that just holds the name on the paperwork).

Because a "Program Manager" is explicitly written into the core definitions of the contract, the actual power to make decisions—such as whether to file a lawsuit, foreclose, or settle a debt—almost always rests entirely with the Program Manager or the Beneficiary, not the trustee. The definition of the Asset Schedule notes that while legal title is held by the trustee, the assets are:

16

*"...subject to the rights of the related Participants under the Participation Agreement."*

This means the trustee cannot act independently because third-party participants hold contractual rights over those exact assets, tying the trustee's hands.

This language explicitly strips the trustee of independent litigation authority and protects it from liability for failing to sue unless someone else commands it to do so in writing and provides it with funding/indemnification. The Legal Title Trustee lacks any independent power to sue or manage assets without explicit instructions from Truman Capital Advisors, LP (the Program Manager).

Based on a thorough review of the Trust Agreement, the Legal Title Trustee (U.S. Bank National Association) does not have independent power to sue on its own initiative (pp. 15-16).The document strips the trustee of independent discretion regarding enforcement and litigation, making it a purely passive entity (pp. 15-16). Instead, its power to execute legal documents or pursue legal action is strictly derivative and contingent upon external instructions (pp. 15-16).

The explicit restrictions on the trustee's power to sue are detailed across several key sections:

1. Mandatory Written Directions Required (Section 4.01 & 4.02)

No Implied Duties: Section 4.01(a)(i) states that the trustee "undertakes to perform such duties and only such duties as are specifically set forth in this Agreement or as may be directed by the Participation Agent... or the Program Manager" (p. 15). It explicitly bars courts or parties from reading any implied covenants or obligations into its role (p. 15).

No Action Absent Direction: Section 4.02(a) explicitly clarifies that the trustee "has no obligation to act absent such direction" from the Program Manager or Participation Agent (p. 16). This directly includes executing documents necessary for the "protection of property constituting the Trust Fund" or the "enforcement of the rights" of the trust (p. 16).

 Immediate Halts Pending Instruction (Section 4.02)

Ambiguity or Conflict: Under Section 4.02(c), if the trustee is unsure of how to proceed or if the document is silent on a particular factual scenario (such as an unexpected litigation choice), the trustee cannot act independently (p. 17). It must freeze, give notice, and wait for written instructions from the Program Manager or Participation Agent (p. 17).

Financial Defenses and Refusal to Sue (Section 4.01)

Risk of Funds: Section 4.01(f) establishes that the trustee is never required to "expend, advance or risk its own funds or otherwise incur financial liability" (p. 16). Because litigation inherently carries financial risk and legal fees, the trustee has a contractual right to refuse to file a lawsuit unless the directing parties provide "adequate indemnity against such risk or liability" (p. 16).

Delegation of Prosecution to the Servicer (Section 7.02)

Execution of Legal Papers Only: Section 7.02(b) shows how foreclosure and litigation are practically handled (p. 25). The trustee does not discover defaults or initiate suits (pp. 16, 25). Rather, the *related Servicer* conducts the repossession or foreclosure (p. 25). The trustee's only role is passive: it must execute the litigation paperwork and powers of attorney that the Servicer prepares and places in front of it (p. 25).

## CONCLUSION

The Truman 2016 SC6 Title Trust is a "naked" title trust (p. 4). Thus the beneficiaries of this Trust must be identified to establish diversity. While a lawsuit or foreclosure has theoretically been brought *in the name of* U.S. Bank National Association (as Legal Title Trustee) because it holds the technical legal title, the

19

trustee has zero independent power to launch, settle, or manage that lawsuit on its own whim (pp. 4, 16). It acts strictly as a mechanical agent executing written orders passed down by Truman Capital Advisors, LP (the Program Manager) or the Participation Agent (pp. 4, 16). This language is readily available  and  is not an action in this Motion to Compel Discovery of the Participation Agreement, although that agreement would indicate the real parties in interest, for purposes of diversity jurisdiction.

For these reasons the relief sought by Defendant should be granted and action on the Summary Judgment motion be stayed until the Plaintiff complies with FRCP 7.1.


ROBERT TED BROWN
By his attorney

 /s/ John B. Ennis                                                    June 9, 2026
JOHN B. ENNIS, ESQ., #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

Certificate of Service

I certify that a copy of this Motion was served by electronic filing on all attorneys of record on June 9, 2026.

/s/ John B. Ennis