**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST, PLAINTIFFS, v. ROBERT TED BROWN; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; AND INTERNAL REVENUE SERVICE, DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)    C.A. No. 21-CV-00198-JJM-PAS<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, U.S. Bank, National Association, as legal title Trustee for Truman 2016 SC6 Title Trust ("U.S. Bank" or "Plaintiff"), replies to Defendant, Robert Ted Brown's ("Mr. Brown" or "Defendant"), Objection (ECF 65) to Plaintiff's Motion for Summary Judgment.

**ARGUMENT**

Defendant attacks the Affidavit of Elizabeth Corral, of Carrington Mortgage Services, LLC (ECF 40-3) ("Corral Affidavit") on various grounds, but Defendant asserts no new facts to present a genuine issue of material fact. Neither do Defendant's general denials of Plaintiff's Statement of Undisputed Facts meet his burden of proof under Fed. R. Civ. P. 56(c) because he cannot rely on general allegations to show the existence of a genuine issue of material fact. Lastly, Defendant's assertions that the Motion should be deferred under Fed. R. Civ. P. 56(d) are unfounded considering this Court's recent decision denying Defendant's Motion to Compel and untimely given that discovery closed on January 15, 2026 without extension of the agreed-upon Pretrial Scheduling Order (ECF 33). Undisputedly, Mr. Brown has not made any payments on the

Mortgage since October 2015 while the Plaintiff continues to maintain taxes and insurance on the Property at its own expense. The just, equitable remedy, in this case, is foreclosure.

## 1. MR. BROWN'S ALLEGATIONS AGAINST THE CORRAL AFFIDAVIT DO NOT SATISFY HIS BURDEN OF PROOF TO ESTABLISH THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT.

The Defendant raises numerous allegations against the Corral Affidavit, but asserts no new facts to establish the existence of a genuine issue of material fact. While it is the movant's burden to first prove the nonexistence of any genuine issue of material facts, "[t]he burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact." *Pleasantdale Condo., LLC v. Wakefield*, 37 F.4th 728, 733 (1st Cir. 2022). "Genuine issues of material fact are not the stuff of [a nonmovant's] dreams." *Id.* (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)). The nonmovant "must present definite, competent evidence to rebut the motion" for summary judgment on those issues where the nonmovant bears the ultimate burden of proof and cannot rely on "conjectural or problematic" evidence. *See Pleasantdale Condo.*, 37 F.4th at 733 (internal quotations omitted).

### a. THE CORRAL AFFIDAVIT COMPLIES WITH FED. R. EVID. 803(6).

First, Mr. Brown alleges that the Corral affidavit does not satisfy Fed. R. Civ. P. 803(6), the business records exception to hearsay, as discussed in *U.S. Bank Trust, N.A. as Tr. for LSF9 Master Participation Trust v. Jones*, 925 F.3d 534 (1st Cir. 2019). The *Jones* Court held that the U.S. District Court for the District of Maine did not err in granting judgment at trial[1] in favor of the foreclosing mortgagee when it relied on a computer printout to establish the total amount owed on the loan account. *Id.* at 536. On appeal, the mortgagor argued that the loan servicer's exhibit violated Rule 803(6) of the Federal Rules of Evidence because the exhibit "is a product of records

---

[1] *See Jones*, No. 2:16-cv-00617, Judgment ECF 39 (D. Me. Jun. 27, 2018); Order re: Bench Trial (Woodcock, J.) ECF 38 (Jun. 26, 2018).

of some transactions that took place before Caliber became servicer of Jone's account." *See id.*at

537. However, the First Circuit ruled in favor of admitting the mortgagor's exhibit because "[f]acts

in the record, including testimony provided by an employee of Caliber…establish that the servicer

relied on the accuracy of the mortgage history and took measures to verify the same." *Id.* at 538.

The Court noted that "Jones did not 'dispute the transaction history by claiming overbilling or

unrecorded payments,' as she surely could have done if the records were inaccurate." *Id.* (quoting

330 F.Supp. 3d 530, 543 (D. Me. 2018). The *Jones* Court reasoned that

> …if the incorporated information turns out to be unreliable so as to defeat any action to collect the balance Caliber says is due, the loser will be U.S. Bank, not Caliber. But this is simply unrealistic. If Caliber is shown to be claiming unsupportable facts about an account's history, to the financial detriment of U.S. Bank as assigned payee of a mortgagor's note, Caliber's business with U.S. Bank will suffer accordingly, as will its appeal in the eyes of other note holders who contract or might contract with Caliber for its services.

*Id.* at 539.

Here, just as in *Jones*, the Corral Affidavit presents reliable evidence establishing the debt,

the existence of a default, and satisfaction of the contractual conditions precedent, and pursuant to

Rule 803(6) because the Carrington's business records are "intimately integrated" with the prior

servicers' loan records. *See id.* at 537. Carrington's witness testifies that the servicer "relied on the

accuracy of the mortgage history and took measures to verify the same." *See id.* Specifically, the

affidavit attests that

> …Carrington's[] business records include records pertaining to the loans it services which were created by others, including but not limited to records of prior servicers, original documents such as promissory notes, mortgages, title insurance policies and documents pertaining to the origination of the loans…The records from these servicers also include payment records, payment histories, and other accountings to reflect payments due and payments made. To the extent records are received from prior servicers, they were reviewed by Carrington, upon becoming the servicer of this loan to identify any irregularities in the documentation or records received and to verify that all payments previously received were properly applied to the account at issue. Once the documents are verified, those records are thereafter incorporated into Carrington's business records,

similar to the manner in which the records would have been created had Carrington serviced the loan from its inception.

ECF 40-3 at ¶ 3. The *Jones* analysis does not stand for the proposition asserted by Mr. Brown, but rather it "emphasized certain facts elicited through the testimony of the loan servicer's witness: the servicer 'incorporated the previous servicer's records into its own database,' and the servicer's 'acquisition department took steps to review the [prior] servicer's records in a way that assured itself of the accuracy of the records.'" *See U.S. Bank N.A. as Tr. for Registered Holders of Structured Asset Securities Corp. v. Shakoori*, No. 17-394 WES, 2023 WL 3230990, at *3 (D.R.I. May 3, 2023) (quoting *Jones*, 925 F.3d at 538). Carrington's business records satisfy this analysis, including statements that "business records maintained from any prior servicers of this loan…and loan documents and loan account records that were either created or verified (to the extent any payments were received by prior servicers) by Carrington." *See id.*; ECF 40-3 at ¶ 2; *see also Cherewick v. State Farm Fire and Cas.*, 578 F.Supp.3d 1136, 1157 (S.D. Cal. Jan. 7, 2022) ("[A]s long as a court finds that hearsay evidence could be presented in admissible form at trial (*i.e.*, through testimony form a witness laying the foundation from an exception or because the Court finds the evidence to be non-hearsay), it may consider the evidence when ruling on the motion for summary judgment."); *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (noting that "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony"); *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) ("Because the diary's contents could be presented in an admissible form at trial, we may consider the diary's contents in the Bank's summary judgment motion."). However, "the Court is not required to comb through [U.S. Bank's affidavit], identify potential hearsay, and determine if an exception applies" where Mr. Brown presents no evidence to contradict any of

U.S. Banks' facts, but only generally objects to the Corral Affidavit on hearsay grounds. *See Cherewick*, 578 F.Supp. at 1157 (internal quotations and citations omitted).

### b. THE CORRAL AFFIDAVIT SATISFIES THE CONTRACTUAL CONDITIONS PRECEDENT TO FORECLOSURE PURSUANT TO PARAGRAPH 22.

Mr. Brown next asserts that Default Notice dated April 17, 2017 (ECF 40-3, Ex. I) and Acceleration Letter dated June 30, 2017 (ECF 40-3, Ex. K) present evidentiary issues because they were mailed by other entities, Fay Servicing, LLC and Harmon Law Offices, P.C., respectively. (ECF 65-1 at 19-23). This Court has routinely held that integrated business records evidencing the mailing of contractual notices created by a predecessor loan servicer are admissible. *See Citibank, N.A. as Tr. for Am. Home Mortg. Assets Trust 2006-3 v. Caito*, 111 Fed. R. Evid. Serv. 153, No. 18-427-JJM-LDA, 2019 WL 6896309, at *1-2 (D.R.I. Dec. 18, 2019) (rejecting the argument that records from prior servicers that merged into the current servicer must be separately verified before they may be considered under the business records exception). This Court has also upheld the admissibility of integrated business records from a third party vendor evidencing the mailing of similar contractual notices. *See Lema v. Nationstar Mortg., LLC*, 603 F.Supp.3d 17, 20-21 (D.R.I. May 17, 2022) (rejecting argument that records from servicer's mailing vendor which mailed documents on servicer's behalf satisfies the business records exception).

Although Corral Affidavit presents evidence obtained from a prior servicer, including Fay Servicing, these documents are nonetheless reliable because Carrington has taken measures to verify the accuracy of the mortgage history. *See Jones*, 925 F.3d at 538. Relying on the prior servicer's records, Carrington verified that the loan went into default in October 1, 2015 and no payment has been made since. *See* ECF 40-3 at ¶¶ 12, 17. Likewise, Carrington verified the prior servicer's records in determining that the Default Notice dated April 17, 2017 was mailed by Fay Servicing, LLC. *See id.* at ¶ 13. In fact, the letter contains a U.S. Postal stamp indicating that

postage was paid for the first-class mail and addressed to the Property. *See id.*, Ex. I. While the Defendant vehemently asserts that the Affidavit does not provide specific details of the servicing history or Fay Servicing's mailing records, he offers no competent facts to contradict the Corral Affidavit. *See* ECF 65-21 at ¶¶ 18-19. Just as in *Caito*, the only factual question raised by Mr. Brown, to which he presents no evidence to contradict the quoted amount, is "just the calculation of what [he] owes because the affidavit does not include the details of the sources of [U.S. Bank's] figures." *Compare* 2019 WL 6896309 at *1, *with* ECF 65-1 at 20 ("The Fay letter creates a substantial cure-amount dispute."). This Court's decision in *Caito* is clear that "[t]his is not enough to defeat summary judgment in this judicial foreclosure case." *See* 2019 WL 6896309 at *3.

Similarly, Carrington's records incorporate an Acceleration Notice mailed by its prior counsel, Harmon Law Offices, P.C., which originally filed this action in 2021 before undersigned counsel entered his appearance in 2022. *See id.* at ¶ 15. Just as in *Lema*, Mr. Brown argues that "the affidavit contains no evidence of authenticity, accuracy, or knowledge of the mailing practices and procedures [Harmon Law] utilizes." *Compare* 603 F.Supp. at 20, *with* ECF 65-21 at ¶ 22 ("Plaintiff has not established the authority of Fay Servicing or Harmon/Harmon counsel to accelerate on behalf of U.S. Bank…"). Like in *Lema*, the Corral Affidavit, here, testifies that she "had personal knowledge of [Carrington's] procedures for record keeping, personally examined the electronic records, and verified [Carrington's] procedures for record keeping, personally examined the electronic records, and verified [Carrington's] communications and activity history related to [Mr. Brown]'s account." *Compare* 603 F.Supp. at 21, *with* ECF 40-3 at ¶ 2. Furthermore, the Carrol affidavit introduces information demonstrating that Harmon Law mailed the Acceleration Notice on behalf of U.S. Bank, containing Certified Article Number 9414 7266 9904 2102 0861 54. *See* ECF 40-3 at ¶¶ 3, 15. Defendant does not offer any evidence to contradict these

facts and relies on a prior state court filing by prior servicer, Rushmore Loan Management Services, LLC, that corroborates the Corral Affidavit. *See* ECF 65-5, Ex. 3 – Aff. of Maria Naguit at ¶ 17, Ex. I – Acceleration Letter, No. KM-2018-1147 (filed Oct. 1, 2020).

Regardless, Defendant's claims against the Acceleration Letter are irrelevant to this action because "[t]here is nothing in paragraph 22 that requires the mortgagee to reiterate that right in a subsequent notice of acceleration." *See Diaz v. Select Portfolio Servicing*, 355 A.3d 1044 (R.I. 2026). Additionally, Defendant's reliance on paragraph 19 is misplaced because it "is silent as to the need for any notification of the deadline for reinstatement; nor is the inclusion of the necessity to cure the default as a component of reinstatement enough to create such further notification requirement." *See Serenska v. Wells Fargo Bank, N.A.*, 307 A.3d 1275, 1282 (R.I. 2024). Unlike the notice provision governed by paragraph 22, the reinstatement provisions under paragraph 19 merely "sets forth various conditions that must be satisfied for there to be a reinstatement of the mortgage. But there is no need to discuss those conditions in the context of this case." *See id.* at 1281. Likewise, "paragraph 22 is absolutely silent as to any requirement that the borrower be advised that said borrower has the right to reinstate the mortgage (provided that there is compliance with certain stated conditions) *up to five days before the sale of the property*." *See id.* (emphasis in original). "Critically, however, neither paragraph 22 nor [our Supreme Court's] decision in *Woel* [*v. Christiana Tr.*, 228 A.3d 339 (R.I. 2020)] requires that the borrower be re-advised of that right in the notice of default." *See Serenska*, 307 A.3d at 1282.[2]

---

[2] Indeed, even the *Woel* Court declined to adopt the original ruling in *Thompson v. JPMorgan Chase Bank, N.A.*, 915 F.3d 801 (1st Cir. 2019) (*Thompson I),* which Mr. Brown seems to allude to in his memorandum of law, because "it does not apply to this case." *See* 228 A.3d at n12.

c.  **THE CORRAL AFFIDAVIT ESTABLISHES PLAINTIFF'S NOTE HOLDER STATUS.**

Defendant also alleges that the Corral Affidavit does not prove negotiation, note holder status, or validity of the allonge, pursuant to R.I. Gen. Laws 6A-3-201, 3-301, and 3-204 respectively. *See* ECF 65-1 at 39. Defendant presents no evidence to contradict Plaintiff's claim that Mr. Brown executed the Note, but states that the Corral Affidavit fails to establish "the date, authority, physical placement, custody, or authenticity" of the Note and its subsequent endorsements to ultimately reach the conclusion of Note ownership. *Resp. to Pl's Statement of Facts* (ECF 65-21) at 2, 10-12. Carrington attests that the Note has been endorsed in blank and that U.S. Bank is currently the holder of the Note.[3] *See* ECF 40-3 at ¶ 5. The Rhode Island Supreme Court rejected these same arguments raised here by Mr. Brown in its decision in *Porch Swing Holdings LLC v. Mallory*, 345 A.3d 404 (2025). The *Mallory* Court rejected the same arguments that "a mortgagee can only foreclose if the mortgagor and borrower are in default of a *** promissory note owned by the mortgagee, or by an entity for whom the mortgagee is agent ***." *Id.* at 409.

Here, unlike the note in *Mallory*, there is no competent evidence that the U.S. Bank's Note was ever lost. *See id.* at 405. Although Mr. Brown's Answer alleges multiple times in the affirmative defenses the Note has been lost, he has never presented any competent evidence to support his assertions and Plaintiff does not have to disprove every fever dream alleged by the Defendant. *See Pleasantdale Condo.*, 37 F.4th at 733. Indeed, Mr. Brown has not asserted any facts to suggest that he has personal knowledge of the Note's record keeping or that some other entity is simultaneously demanding payment on the Note.

---

[3] Undersigned counsel attempted multiple times between December 2025 and February 2026 to schedule a viewing of the original promissory note, but Mr. Brown's counsel declined.

REPLY MEMO IN SUPPORT OF PL'S MOT. FOR SUMM. J.          C.A. NO. 1:21-CV-00198-JJM-PAS

The Corral Affidavit proves, as of the date of signing the affidavit on October 2025, by review of Carrington's business records that the Note has been endorsed in blank and that Plaintiff is the holder of the Note, attaching a "true and accurate copy of the Note" as Exhibit B. *See* ECF 40-3 at ¶ 5. Carrington's business records reflect the same information as the prior servicer, Rushmore Loan Management Services LLC, whose assistant vice presidents testified to the same facts in support of motions for default judgment in this action[4] and in the Kent County Superior Court,[5] executed in July 2022 and 2020, respectively. *See Hollins Aff.* (ECF 14-1) at ¶ 4; *Naguit Aff.* at ¶ 9 (ECF 65-5, Ex. 3). Even without multiple affidavits from the prior servicer, the Corral Affidavit would satisfy Plaintiff's burden of proof, to the extent the Note is relevant to these proceedings. Regardless, U.S. Bank's authority to foreclose does not rely on the identification of the note owner because a mortgagee may foreclose even if it does not hold the note. *Mallory*, 345 A.3d at 408.

### d. THE CORRAL AFFIDAVIT ESTABLISHES A VALID ASSIGNMENT CHAIN.

Next, Mr. Brown asks the Court to assume the assignment chain is invalid because "[t]he original lender was New Century; the Mortgage named MERS as nominee for New Century and its successors and assigns; New Century entered bankruptcy; and MERS later purported to assign the Mortgage to Bank of America in 2011." ECF 65-1 at 28. As Plaintiff argues in its motion for summary judgment, this argument was rejected at summary judgment in *DiLibero v. Mortgage Electronic Registration Systems, Inc.*, 198 A.3d 1259 (R.I. 2019) (*DiLibero II*). Defendant would urge the Court to look only at the reversed motion to dismiss in *DiLibero v. Mortgage Electronic*

---

[4] The Motion for Default Judgment was vacated on June 9, 2025, relying on the Defendant's representations that he was not served in this action because he had separated from his spouse who continues to reside in the Property. *See* ECF 56 at 3-5.

[5] The Plaintiff had previously filed a judicial foreclosure action, C.A. No. KM-2018-1147, which was voluntarily dismissed before filing the instant action in U.S. District Court.

*Registration Systems, Inc.*, 108 A.3d 1013 (R.I. 2015) (*DiLibero I*), which vacated the lower court's ruling based on Rhode Island's broad Rule 12(b)(6) standard of "any conceivable set of facts[.]" *See id.* at 1015-16. After deciding that the motion justice erred in granting dismissal prematurely, the Supreme Court later affirmed the Superior Court's judgment in *DiLibero II*, finding that the mortgagor had not established a genuine issue of material fact.  There, the Rhode Island Supreme Court held that summary judgment was appropriate because New Century's bankruptcy filing was not competent evidence to invalidate the assignment from MERS. *See DiLibero II,* 198 A.3d 1261-62 (R.I. 2019). The Supreme Court acknowledged the mortgagor's presentation of a "certified copy of the New Century rejection of its MERS membership," but this was nonetheless insufficient evidence to defeat the recorded assignment because "[mortgagor] failed to contradict the affidavits attached to defendants' memorandum in support of summary judgment through argument or documentary evidence." *See id.*

Here, just as in *DiLibero*, the Corral Affidavit establishes that New Century transferred the Note, in this case to Countrywide Bank, N.A., prior to rejecting its executory contract with MERS. *Compare id.* at 1260, *with* ECF 40-3, at ¶¶ 5, 7. The Carrol Affidavit includes a true and accurate copy of the Note which contains an endorsement by New Century pay to the order of Countrywide Bank, N.A. *See* ECF 40-3, Ex. B at 4. Public records filed with the Federal Deposit Insurance Corporation indicate that the endorsement likely occurred prior to March 12, 2007, when Countrywide changed its institution name from a national association to a federal savings bank. *See id.*, Ex. D. Even if the Note was endorsed after Countrywide's name change, Bank of America, N.A. acquired Countrywide along with its many subsidiaries in 2009. *See id.*, Ex. E at 1-2. This ultimately coincides with the eventual assignment executed by MERS on December 2, 2011, which still held title to the Mortgage as nominee. *See* Ex. F. Critically, Mr. Brown asserts no competent

evidence to prove that New Century sold the loan to any other entity or that it instructed MERS to assign the Mortgage to some other entity. *See* ECF 65-21 at ¶ 15.

### e. THIS COURT SHOULD RECOGNIZE THE PUBLICLY RECORDED LIMITED POWERS OF ATTORNEY SERVED IN PLAINTIFF'S RESPONSE TO REQUESTS FOR PRODUCTION OF DOCUMENTS.

Later in his memo, Defendant argues that "[n]one of the purported powers of attorney were attached to the affidavit in support of summary judgment", implying that this somehow voids the publicly recorded assignments. *See* ECF 65-1 at 33-34. Surprisingly, Mr. Brown does not disclose that the publicly recorded limited powers of attorney granted by the previous assignors, Bank of America, N.A. and Wilmington Trust, N.A., as Trustee for ARLP Securitization Trust, Series 2014-1, were served with Plaintiff's initial discovery responses in August 21, 2024. *See Pl's Resp. to RPDs*, Ex. C – Indecomm LPOA (RPD000225-28); Ex. D – LPOA to Meridian (RPD000229-34).

The Rhode Island Supreme Court in *Moura v. Mortg. Elec. Registration Sys., Inc.*, 90 A.3d 852 held that conclusory challenges to the assignment of mortgage did not render the assignments void, and therefore the mortgagor lacked standing. *See id.* at 858. Although the lower court in *Moura* never briefed the issue of standing, the Supreme Court applied the First Circuit's decision in *Wilson v. HSBC Mortg. Serv., Inc.*, 744 F.3d 1 (1st Cir. 2014) in reaching its final holding. *See* 90 A.3d at 857. One of the conclusory allegations made in *Moura*, much like Mr. Brown has asserted, was that the signatory "lacked authority to assign the mortgage on behalf of MERS." *See id.* at 855. The motion justice held, which the Supreme Court affirmed, that the "[mortgagor]'s argument was without merit because the assignment was signed by [the signatory] and because the certification that he was vice president of MERS was acknowledged by a notary[,]" amounting to "presumptive evidence" that the signatory had authority to sign. *See id.*

Here, the Corral Affidavit establishes presumptive evidence that on December 2, 2011 MERS assigned the Mortgage to Bank of America ("First Assignment"); on April 15, 2014, Bank of America assigned the Mortgage to Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as Trustee for ARLP Trust 3 ("Second Assignment"); on March 20, 2015, Christiana Trust assigned the Mortgage to Wilmington Trust, National Association, as Trustee of ARLP Securitization Trust, Series 2014-1 ("Third Assignment"); and on June 29, 2017, Wilmington Trust assigned the Mortgage to the Plaintiff ("Fourth Assignment"). *See* ECF 40-3, at ¶¶ 9-11, 14. The First Assignment was executed by Tina LeRaybaud, who acknowledged before a notary public that she was the Assistant Secretary of MERS. *See* ECF 40-3, Ex. F. The Second Assignment was executed by March Kay Koopman, who acknowledged before a notary public that she was the Assistant Secretary of Indecomm Global Services, as attorney in fact for Bank of America. *See id.*, Ex. G. The Third Assignment was executed by Vicki Porplell, who acknowledged before a notary public that she was an authorized signer for Ocwen Loan Servicing, LLC, as attorney in fact for Christiana Trust, as Trustee for ARLP Trust 3. *See id.*, Ex. H. The Fourth Assignment was executed by Matthew Krueger, who acknowledged before a notary public that he was a vice president of Meridian Asset Services, Inc., as attorney in fact for Wilmington Trust, N.A., Trustee for ARLP Securitization Trust, Series 2014-1. *See id.*, Ex. J.

On or about April 10, 2014, Bank of America executed a limited power of attorney to Indecomm Holdings Inc. dba Indecomm Global Services ("Indecomm LPOA"). *See id.*, Ex. C. The Indecomm LPOA explicitly grants the right to "[p]repare and execute assignments of mortgages…or negotiable instruments." RPD000226. The Indecomm LPOA contains an accompanying exhibit listing the names of authorized signatories, including Marcy Kay Koopman.

*See* RPD000228. The Indecomm LPOA was recorded with the City of Providence Land Evidence Records in Book 10871, Page 54. *See* RPD000226.

On or about July 29, 2016, Altisource Residential, L.P., as owner of its subsidiary companies, including Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as Trustee for ARLP Trust 3 and Wilmington Trust, National Association, as Trustee of ARLP Securitization Trust, Series 2014-1, executed a limited power of attorney to Meridian Asset Services, Inc. ("Meridian LPOA"). *See* RPD000230-33. The Meridian LPOA contains an accompanying exhibit listing the subsidiaries of Altisource, including the prior mortgagees in this action. *See* RPD000233. The Meridian LPOA explicitly grants the right to "execute, acknowledge, seal and deliver … note endorsements…assignments of deed of trusts/mortgages and other recorded documents…as may be necessary or appropriate to effect its execution, delivery, conveyance, recordation or filing. *See* RPD000231. The Meridian LPOA was recorded with the Berkshire County Middle District Registry of Deeds of Massachusetts in Book 6014, Page 202.

On or about November 20, 2013, Altisource, as administrator of the Christiana Trust, Trustee of ARLP Trust 3, executed a limited power of attorney to Ocwen Loan Servicing, LLC ("Ocwen LPOA"). *See* Ex. 2 – Ocwen LPOA. The Ocwen LPOA explicitly grants the right to "execute, acknowledge, seal and deliver … note endorsements…assignments of deed of trusts/mortgages and other recorded documents…as may be necessary or appropriate to effect its execution, delivery, conveyance, recordation or filing. *See* Ex. 2 at 2. The Ocwen LPOA was recorded with the Plymouth County Registry of Deeds of Massachusetts in Book 45051, Page 154. The Defendant never requested the Ocwen LPOA in his discovery requests, but its publicly recorded copy should be acknowledged by the Court to the extent that Mr. Brown now seeks to challenge its existence.

Although the Ocwen & Meridian LPOAs may not be recorded in the State of Rhode Island, this does not preclude the Court from recognizing their effect on the publicly recorded assignments. R.I.G.L. § 34-11-34[6] does not specify when the power of attorney must be recorded. As such, the Assignments' validity is not affected by the fact that the prior mortgagees have delayed the recording of the LPOAs. The critical fact is that the assignments were executed by valid power of attorney and Defendant has asserted no competent facts to contradict the Assignment Chain.

### f. SERVICE ON MERS IS VALID AND MR. BROWN HAS NO STANDING TO ADDRESS SERVICE ON MERS.

Next, the Defendant seeks to address service on a junior mortgagee, claiming that service is ineffective because it was not served on the registered agent listed with the Massachusetts Secretary of State. Plaintiff asserts that service on MERS is valid because the Danville, Illinois address was the proper address for the MERS mailroom. *See e.g. Empire Cmty. Dev. LLC v. Campoverde*, No. 22 Civ. 4046 (RPK) (VMS), 2024 WL 5119122, at *4 (E.D.N.Y. Sept. 11, 2024) ("The Court also finds that Plaintiff properly notified Defendants of the renewed motion for a default judgment by mailing a copy… to MERS as nominee…at 1901 E. Voorhees St., Suite C, Danville, IL 61834 on December 11, 2023."). Neither does Mr. Brown have any standing to raise a challenge to dispute service on MERS. *See Culhane v. Aurora Loan Servs. of NE*, 708 F.3d 282, 290 (1st Cir. 2013).[7]

---

[6] "Any conveyance executed by attorney shall be valid as if executed by the grantor himself, providing that a power of attorney be given by such grantor for this purpose; which power and the deed executed by the attorney thereunder shall be signed, acknowledged, delivered and recorded with like formalities prescribed by law concerning deeds from grantors in person." *Id.*

[7] "Of course, standing has a prudential aspect, which overlays its constitutional dimensions. These prudential considerations 'ordinarily require a plaintiff to show that his claim is premised on his own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law invoked.' *Id.* (internal citations omitted).

14

The Complaint names MERS because it holds a second mortgage dated May 31, 2016 in the original principal amount of $51,800, which is recorded with the Land Evidence Records in Book 318, Page 32. *See Compl.*, (ECF 1) at ¶ 17(a). On September 29, 2021, Plaintiff's process server testified to serving Melissa Johnson, who claims to be designated by law to accept service of process on behalf of MERS, at 1901 E. Voorhees Street, Danville, IL 61834. Even if service were ineffective against MERS, it does not preclude this Court from authorizing judicial foreclosure because nothing in R.I. Gen. Laws §§ 34-27-1 or 34-27-4 provides for a requirement to give notice of sale to junior lienholders.

Plaintiff is not aware of any Rhode Island precedent with regard to junior lienholders in a judicial foreclosure action, but Massachusetts Courts, which similarly follow the title theory of mortgages, have held that "[w]hile foreclosure of a senior encumbrance or mortgage discharges junior liens, the interest of the junior lienholder is not eliminated." *See New Haven Sav. Bank v. Follins,* 431 F.Supp.2d 183, 196 (D. Mass. May 24, 2006); *see also Armand's Eng'g., Inc. v. Country Club, Inc.*, 324 A.2d 334, 338 (R.I. 1974) (holding that foreclosure of a junior mortgage does not affect the rights or claims of a senior mortgage). As a result, failure to provide notice to a junior lienholder does not impact its rights in these proceedings because "the junior lienholder retains an interest in the proceeds of the foreclosure sale and is entitled to any surplus to the extent that that interest." *Id.* This equitable lien may be satisfied through a complaint in interpleader or the by the junior lienholder invoking the Marshaling Doctrine, as described in the bankruptcy courts. *ie. In re Szwyd*, 394 B.R. 230, 236 (Bankr. D. Mass. Apr. 14, 2008). Any surplus proceeds "are held as trust property for the benefit of any junior lienholder as the sole party in interest. *See Follins*, 431 F.Supp.2d at 196. These long-standing principles were likely understood by Rhode Island's Legislature when it enacted the judicial foreclosure statute. Therefore, MERS' due process

rights have not been implicated at this time because no sale has occurred and no surplus proceeds have been identified.

### g. MR. BROWN'S RELIANCE ON THE CONNECTICUT APPELLATE COURT DECISION IS NOT CONTROLLING IN THIS RHODE ISLAND JUDICIAL FORECLOSURE ACTION, PURSUANT TO R.I. GEN. LAWS § 34-27-1.

The Defendant next alleges that *Deutsche Bank Nat'l Trust Co. v. Pototschnig*, 240 A.3d 288 (Conn. App. 2020) establishes the precedent that New Century's endorsement of the Note is suspect as a matter of law, which can only be overcome by an evidentiary hearing establishing its possession and endorsement of the original note. *See* ECF 65-1 at 40-42. Unlike Rhode Island law, Connecticut is a lien theory state where the "in order to have standing to bring a foreclosure action the plaintiff must, *at the time the action is commenced*, be entitled to enforce the promissory note that is secured by the property." *See Pototschnig*, 240 A.3d at 296-97 (emphasis in original; internal quotations and citations omitted). Even in Connecticut, "[t]he plaintiff is not required to prove the factual details of the delivery of the note, such as the precise date and manner in which it acquired the note." *Id.* at 296.

Neither does the New Century bankruptcy filing entitled "Notice of Rejection of Executory Contract" (ECF 65-9, Ex. 7) create a genuine issue of material fact because, as argued in the motion for summary judgment, a similar argument was made in *DiLibero II* where the Rhode Island Supreme Court held that summary judgment was appropriate because New Century's bankruptcy filing was not competent evidence to invalidate the assignment from MERS. *See* 198 A.3d at 1261-62. The Notice of Rejection describes New Century as one of the many debtors involved in a Chapter 11 action, filed with the District of Delaware, No. 07-10416 (KJC), and asserts that the Bankruptcy Court has entered orders in the case, among other things, "Authorizing and Approving Procedures for the Rejection of Executory Contracts [of] Personal and Non-Residential Real Property". Mr. Brown does not offer to describe the relevance of this Notice.

16

Just as in *DiLibero II*, MERS has the authority to enforce the statutory power of sale, irrespective of the beneficial ownership in the note. *See* 198 A.3d at 1261-62. Even if it were relevant, the Corral Affidavit sufficiently establishes that New Century transferred the Note prior to rejecting any executory contract in 2008. The Note contains an endorsement from New Century to Countrywide Bank, N.A. *See* ECF 40-3, Ex. B at 4. Public records filed with the Federal Deposit Insurance Corporation (FDIC) evidence that Countrywide changed its name to Countrywide Bank, FSB on March 12, 2007. *See* ECF 40-3 at ¶ 7, Ex. D. Therefore, the New Century endorsement must have been executed prior to March 12, 2007.

### 2. MR. BROWN'S ASSERTIONS TO DEFER THE MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(D).

While no Rule 56(d) motion has been filed, Defendant alludes throughout his memorandum to deferring the motion for summary judgment to conduct additional discovery pursuant to this rule. Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion [for summary judgment] or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

The First Circuit has laid out 5 elements that must be met to satisfy the rule: (1) Authoritativeness, (2) Timeliness, (3) Good Cause, (4) Utility, and (5) Materiality. *See Emigrant Residential LLC v. Pinti*, 37 F.4th 717, 724 (1st Cir. 2022) (citing *Resolution Trust Corp. v. North Bridge Assoc., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994)). The rule is designed to "protect[] a litigant who justifiably needs additional time to respond in an effective manner to a summary judgment motion." *See id.* (internal citations and quotations omitted). Consistent with the rule's core purpose, "district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter." *Id.* The First Circuit has ruled that although Rule 56(d) has undergone minor

revisions from its 2010 amendment, it will treat cases decided under former Rule 56(f) as authoritative when deciding post-2010 cases arising under Rule 56(d). *Id.*

Here, the Affidavit of Ana Tavarez, legal assistant for Attorney Ennis who represents the Defendant, seeks introduce the firm's business records related to (1) Exhibits 1-5 purporting to be various pleadings filed in the Kent County Superior Court action, C.A. No. KM-2018-1147; (2) Exhibit 6, which is testified to be an allonge to the promissory note, but attaches a Special Warranty Deed for a Florida property and a Limited Power of Attorney dated October 20, 2014; (3) Exhibit 7, which purports to be a certified copy of the New Century Notice of Rejection of Executory Contract filed in the Bankruptcy Court for the District of Delaware; (4) Exhibits 8-9, which purports to be three Requests for Information, pursuant to Regulation X, addressed to Nationstar Mortgage and Rushmore Servicing dated January 30, 2024; (5) Exhibit 10, which purports to be a Rushmore Letter responding to the Request for Information addressed to Attorney Ennis dated March 5, 2025; (6) Exhibit 11-12, which purports to be a four Requests for Information addressed to Carrington dated March 12, 2025; (7) Exhibit 13, which purports to be a Carrington Letter responding to the Request for information addressed to Attorney Ennis dated May 14, 2025; (8) Exhibit 14, which purports to be a copy of a Securities and Exchange Commission form entitled "Uniform Application for Investment Adviser Registration and Report by Exempt Reporting Advisers"; (9) Exhibit 15, which purports to be a Limited Power of Attorney for Truman ACM Golden State REO LLC to Truman Capital Advisors, LP; (10) Exhibit 16, which purports to be a copy of a Truman Capital Advisers, LP brochure allegedly pulled from its website; and (11) Exhibit 17-18, which purports to be a screen printouts of the Massachusetts Secretary of State entity search for MERS dated March 31, 2021, March 4, 2022. *See* ECF 65-2. Defendant asserts that he seeks evidence related to "trust citizenship, note custody, allonge affixation, endorsement

timing, MERS authority, Indecomm authority, ARLP/Truman depositor records, mailing records, Fay/Harmon authority, prior-servicer boarding records, payment history, legal fees, corporate advances, and amount-due verification. *See* ECF 65-1.

The first element, Authoritativeness, is met if the affidavit in support of a Rule 56(d) motion is "signed by a person who possesses first hand knowledge and who is competent to address the specifics of the matters discussed." *See Resolution Trust Corp.*, 22 F.3d at 1204. Although the movant's attorney may sign the affidavit, this does not excuse the movant from proving actual knowledge of the reason for delay or matters discussed. *See id.* The second element, Timeliness, is met when invoked "within a reasonable time following receipt of a motion for summary judgment." *See Resolution Trust Corp.*, 22 F.3d at 1204. While there is no fixed time limit for filing a Rule 56(d) motion, "courts generally imply an obligation to perform the act within a reasonable time." *See id.* As noted by the First Circuit, use of Rule 56(f) "requires due diligence both in pursuing discovery before the summary judgment initiative surfaces and in pursuing an extension of time thereafter." *Id.* at 1203. The third element, good cause, requires the movant to demonstrate good cause "viewed against the historical background of the litigation." *See Flanders+Medeiros, Inc. v. Bogosian*, 868 F.Sup. 412, 424 (D.R.I. Nov. 14, 1994), affirmed in part, reversed in part on other grounds 65 F.3d 198 (1st Cir. 1995). The fourth element, utility, is met only if the movant can present "a plausible basis for a belief that discoverable materials exist that would likely suffice to raise a genuine issue of material fact and, defeat summary judgment. *See Resolution Trust Corp.*, 22 F.3d 1206. The fifth element, materiality, requires the movant to show that "the kind of additional discovery that will serve to vivify a Rule [56(d)] motion is theoretically different from, and ordinarily will be more restricted than, the kind of discovery generally permitted under the Federal Rules. *See id.* at 1207.

Here, nothing in the affidavit describes the reason of Defendant's delay in seeking further discovery in this matter. *See Resolution Trust Corp.*, 22 F.3d at 1204. Although the Defendant's firm may have first hand knowledge of the Court filings, letters requesting information, and public records incorporated into its business records, nothing in the affidavit addresses the core purpose of a Rule 56(d) motion. Instead, the affidavit seeks to present questions of fact that Plaintiff has addressed above. Neither does the affidavit explain how these documents should lead to the discovery of any relevant information should additional discovery be permitted. Therefore, even if the affidavit may have authoritativeness concerning the documents presented, they are not responsive to a Rule 56(d) determination.

U.S. Bank has not obstructed Mr. Brown's discovery efforts, offering to perform a viewing of the original note despite the blizzard conditions in February 2026 only to be declined nonchalantly by Mr. Brown on the eve of the viewing. Mr. Brown cannot justify this late-stage discovery demand except to further delay the inevitable motion for summary judgment. Even after this Court has ruled that the New York Trust Agreement satisfies U.S. Bank's diversity jurisdiction, Mr. Brown still alleges that further discovery must be obtained to challenge its diversity. Therefore, the Court should rule that Mr. Brown's informal request to defer the motion is untimely because his delay is unreasonable.

Finally, Mr. Brown has not satisfied the final two elements of Utility and Materiality because the information sought has either been produced in its discovery requests or should have been requested before the close of discovery. U.S. Bank has on three separate occasions proffered its responses to Defendant's discovery requests, most recently in November 2025. The documents provided include loan transaction history reports, limited powers of attorney, a copy of the original note, servicing notes, copies of the mortgage and related assignments, and trust agreements relative

to Plaintiff's diversity jurisdiction. Mr. Brown has had several months to request additional discovery or to extend the pre-trial scheduling deadlines, but delayed until the eve of his deadline to file a response to the motion for summary judgment filed in December 2025. Therefore, this court should deny Defendant's request to defer the motion for summary judgment pursuant to Rule 56(d).

## **<u>CONCLUSION</u>**

Mr. Brown's conclusory allegations fail to establish the existence of a genuine issue of material fact. Mr. Brown has not presented any competent evidence to refute the material facts raised in the Corral Affidavit, specifically that the Mortgage remains in default since October 2015, the Fay Servicing Default Letter was mailed on April 17, 2017, and the Plaintiff holds the Note & Mortgage by publicly recorded Assignment Chain.

WHEREFORE, Plaintiff requests that this Court grant its motion for summary judgment authorizing foreclosure of the subject property and dismissing Mr. Brown's affirmative defenses.

<div style="margin-left:50%">

Respectfully submitted,
PLAINTIFF
by its attorneys,

*/s/ Rowdy M. Cloud*
Rowdy M. Cloud, Esq. (#9383)
Brock and Scott, PLLC
23 Messenger Street, Second Floor
Plainville, MA 02762
(508) 379-4516

</div>

DATE: June 29, 2026