UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Legal Title Trustee for TRUMAN 2016-SC6 TITLE TRUST,<br>Plaintiff,<br><br>v.<br><br>ROBERT TED BROWN; MORTGAGE ELECTRONIC REGISTRATION SYSTEMs, INC.; AND INTERNAL REVENUSE SERVICE,<br>Defendants. | ) | C.A. No. 21-198-JJM-PAS |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Cour Chief Judge.

Plaintiff U.S. Bank National Association, as Legal Title Trustee for Truman 2016-SC6 Title Trust ("U.S. Bank"), moves for summary judgment against Defendant Robert Ted Brown ("Mr. Brown" or "Defendant"), seeking a judgment that it is entitled to foreclose a mortgage on Mr. Brown's home in West Greenwich, Rhode Island, and leave to conduct a foreclosure sale. ECF No. 40 at 1. Mr. Brown opposes the motion on numerous grounds — that this Court lacks diversity jurisdiction, that U.S. Bank has not proven an unbroken chain of authority to foreclose, that U.S. Bank's summary-judgment affidavit is not competent evidence, that U.S. Bank did not strictly comply with the mortgage's default-notice requirements, and that

summary judgment should in any event be deferred to allow further discovery. ECF No. 65-1 at 1-3.

For the reasons stated below, the Court concludes that no genuine issue of material fact precludes entry of judgment for U.S. Bank, and GRANTS U.S. Bank's Motion for Summary Judgment.

## I. BACKGROUND

On May 31, 2006, Robert Ted Brown acquired title to the property at 199 Hudson Pond Road, West Greenwich, Rhode Island (the "Property"). ECF No. 40-1 ¶ 1. That same day, Mr. Brown executed a promissory note (the "Note") payable to New Century Mortgage Corporation ("New Century") in the original principal amount of $414,400, and granted a mortgage (the "Mortgage") on the Property to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for New Century and "its successors and assigns." *Id.* at 2–4.

The Note passed through a series of endorsements: from New Century to Countrywide Bank, N.A., before March 12, 2007; from Countrywide Bank, N.A. (which changed its name that day to Countrywide Bank, FSB) to Countrywide Home Loans, Inc.; and, finally, in blank. *Id.* ¶¶ 10–13. Countrywide Bank, FSB merged into Bank of America, National Association ("Bank of America") in 2009. *Id.* ¶ 14.

The Mortgage was later assigned four times: (1) on December 2, 2011, MERS assigned the Mortgage to Bank of America, by an instrument executed by Tina LeRaybaud, acknowledged before a notary to be an Assistant Secretary of MERS; (2) on April 15, 2014, Bank of America assigned the Mortgage to Christiana Trust, a

division of Wilmington Savings Fund Society, FSB, as Trustee of ARLP Trust 3, by an instrument executed by Marcy Kay Koopman, acknowledged to be an Assistant Secretary of Indecomm Global Services, as attorney-in-fact for Bank of America; (3) on March 20, 2015, Christiana Trust assigned the Mortgage to Wilmington Trust, National Association, as Trustee of ARLP Securitization Trust, Series 2014-1, by an instrument executed by Vicki Porplell, acknowledged to be an authorized signer for Ocwen Loan Servicing, LLC, as attorney-in-fact for Christiana Trust; and (4) on June 29, 2017, Wilmington Trust assigned the Mortgage to U.S. Bank, by an instrument executed by Matthew Krueger, acknowledged to be a vice president of Meridian Asset Services, Inc., as attorney-in-fact for Wilmington Trust. *Id.* ¶¶ 15–17, 21; ECF No. 40-3 at 51-63.

Mr. Brown defaulted under the Note and Mortgage on October 1, 2015, and has made no payment since. ECF No. 40-1 ¶ 18. On April 17, 2017, Fay Servicing, LLC ("Fay"), then the loan servicer, mailed Mr. Brown a notice of default (the "Default Notice") telling him that he was in default, that he had a right to cure, that the amount required to cure was $50,365.44, that he was required to cure by May 22, 2017, and that failure to cure could result in acceleration, judicial foreclosure, and sale of the Property. *Id.* ¶¶ 19–20; ECF No. 40-3 at 60-62. The stated cure amount included, among other things, a $1,339.51 corporate advance balance. ECF No. 40-1 ¶ 20. On June 30, 2017, U.S. Bank's then counsel sent Mr. Brown a letter accelerating the Note. *Id.* ¶ 22. Mr. Brown did not cure the default or reinstate the Mortgage. *Id.* ¶ 24.

U.S. Bank filed this action on May 4, 2021, seeking judicial foreclosure (Count I) and a declaratory judgment authorizing the foreclosure sale (Count II) under R.I. Gen. Laws § 34-27-1, et seq. *Id.* ¶ 25. At the time of filing, U.S. Bank was a New York common-law trust; on June 23, 2021, after this action was filed but before Mr. Brown was served, the trust converted to a Delaware statutory trust. *Id.* ¶¶ 26–27. The docket in this case has an unusually complicated procedural history involving service, default, and vacatur that is recounted in detail in the Magistrate Judge's May 21, 2026 Memorandum and Order, ECF No. 56, and is not repeated at length here. In brief, default entered against Defendants in March 2022, and default judgment in August 2022; Mr. Brown appeared through counsel in February 2024 and ultimately moved to vacate; and on June 9, 2025, the Court vacated the default judgment as to Mr. Brown and deemed the Complaint served on him as of that date, leaving May 4, 2021 as the operative filing date for jurisdictional purposes. *See* ECF No. 56 at 4–5; ECF No. 40-1 ¶¶ 28–30, 40; ECF No. 15; ECF No. 16. MERS and the Internal Revenue Service, both named as junior lienholders, were defaulted in March 2022 along with Mr. Brown. ECF No. 40-1 ¶¶ 23, 29–30; ECF No. 15; ECF No. 16.

U.S. Bank moved for summary judgment on December 1, 2025. ECF No. 40. Mr. Brown opposed on June 20, 2026, ECF No. 65, and separately responded to U.S. Bank's Statement of Undisputed Facts and submitted his own statement of disputed facts. ECF No. 65-21. U.S. Bank replied on June 29, 2026. ECF No. 68. Mr. Brown thereafter moved to strike or disregard certain material submitted with the reply, or

in the alternative for leave to file a sur-reply (ECF No. 71);[1] to compel further interrogatory answers (ECF No. 70); and for sanctions and enforcement of an earlier discovery order (ECF No. 69). All these motions, besides one,[2] have been denied. ECF No. 76.

## II. STANDARD OF REVIEW

When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the non-moving party. *Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Federal Rule of Procedure 56(a) dictates that summary judgment should

---

[1] Mr. Brown's principal objection was to Plaintiff's reliance, for the first time in reply, on a limited power of attorney from Altisource Residential, L.P. to Ocwen Loan Servicing, LLC. ECF No. 71-1 at 3 (identifying the Ocwen power of attorney as new material first relied upon in reply). As explained below, the Court's conclusion that Plaintiff has established an unbroken chain of assignments does not depend on that document; it rests instead on the presumptive validity attaching to a recorded assignment executed and acknowledged by a person representing herself to hold authority to sign on the assignor's behalf, a presumption Defendant has not rebutted with competent evidence. *See Moura v. Mortg. Elec. Registration Sys., Inc.*, 90 A.3d 852, 855, 858 (R.I. 2014).

[2] By Memorandum and Order dated September 14, 2026, ECF No. 76, the Magistrate Judge denied Mr. Brown's Motion to Compel Complete and Verified Interrogatory Answers (ECF No. 70) and Motion for Sanctions (ECF No. 69). The Magistrate Judge did not resolve Mr. Brown's request, made in the alternative within the same filing that sought to file a sur-reply (ECF No. 71) and referred that question to the undersigned. *See infra.* In any event, because this Order grants summary judgment in Plaintiff's favor, there is no further proceeding left for a sur-reply to inform, and leave to file one is denied as moot. ECF No. 71.

In a footnote to her Memorandum and Order, the Magistrate Judge noted that this action was one the subject of a temporary restraining order, entered February 13, 2024, enjoining a foreclosure sale then proceeding on the default judgment against Mr. Brown. Because this order now resolves the case on the merits and authorizes Plaintiff to proceed to a foreclosure sale, that temporary restraining order is dissolved.

be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute is "genuine" when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992) (citing *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)). If there is a genuine dispute of a material fact, that dispute would "need[ ] to be resolved by a trier of fact." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018) (citing *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)).

## III. DISCUSSION

### A. Subject-Matter Jurisdiction

Mr. Brown renews, in opposition to summary judgment, his argument that U.S. Bank has not established diversity jurisdiction because it sues as Legal Title Trustee of a trust whose citizenship, he contends, cannot be determined without discovery into the trust's depositor, participants, and program manager. ECF No. 65-1 at 6. This argument was fully litigated before and rejected by the Magistrate Judge in her May 21, 2026 Memorandum and Order resolving Mr. Brown's motion to compel compliance with Rule 7.1 of the Federal Rules of Civil Procedure. ECF No. 56 at 10-13

The Court has independently reviewed that order and adopts its reasoning. Diversity jurisdiction is determined "as of the filing of the complaint," here May 4, 2021, when the Trust was, and is undisputed to have been, a New York common-law trust. *Id.* at 7–8. Under settled law, "a traditional common law trust under New York law takes the citizenship of its trustee," because New York law empowers the trustee, not the trust, to sue and be sued. *Id.* at 8 (citing *CFSP 2024-AHP1 81-83 Seaman Ave. LLC v. 81 Seaman Realty LLC*, No. 25-cv-4113 (RA), 2025 WL 2606687, at *2 (S.D.N.Y. Sept. 9, 2025)). Having reviewed the operative trust agreement, the Magistrate Judge found that it "vests U.S. Bank with legal title to the assets, the power to manage them and to bring and control this litigation," consistent with *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 464–66 (1980), and that U.S. Bank's citizenship as a national banking association is therefore controlling for diversity purposes. *Id.* at 9, 12-13 (citing *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2026)). She also found that Mr. Brown's request for discovery into the trust's depositor, participants, and program manager was not the kind of inquiry Rule 7.1 authorizes, and that *GE Oil & Gas, LLC v. Waguespack*, 523 F. Supp. 3d 926 (W.D. La. 2021), on which Mr. Brown relies, is inapposite because, unlike there, only the Trustee — not the Trust itself — is a party here, and there is no allegation that the Trust was created to defraud creditors. *Id.*at 12–13.

The Court finds no basis to depart from that analysis and thus concludes that it has subject-matter jurisdiction over this action under 28 U.S.C. § 1332.

B. Rule 56(d)

Mr. Brown has not filed a formal motion under Fed. R. Civ. P. 56(d), but his opposition repeatedly urges that summary judgment should be denied or deferred pending further discovery, supported by an affidavit from his attorney's legal assistant, Ana Tavarez (ECF No. 65-2). ECF No. 65-1 at 1-2. A party invoking Rule 56(d) must make a timely, authoritative showing that (1) good cause excuses is not having discovered those facts sooner; (2) there is a plausible basis that those facts exist; and (3) those facts, if obtained, would influence the outcome. *Pina v. Child.'s Place*, 740 F.3d 785, 794 (1st Cir. 2014). Courts "construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter," *Emigrant Residential LLC v. Pinti*, 37 F.4th 717, 724 (1st Cir. 2022) (quoting *Resol. Tr. Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994)), but the rule "is not meant to clear the way for additional discovery on demand," and "when a party has had a full and fair opportunity to obtain relevant facts earlier in a case and has forgone that opportunity, there will seldom be good cause" to grant relief. *Id.* at 724–26.

The Tavarez affidavit does not satisfy this standard. It catalogs a series of documents — prior state-court filings, a purported allonge, a bankruptcy notice, discovery correspondence, an SEC filing, and corporate-registration printouts — without explaining why Mr. Brown could not obtain the additional discovery he now seeks before the close of discovery on January 15, 2026, or identifying with particularity what further discovery would be sought, from whom, and why it would

likely create a genuine issue of material fact. That is insufficient; "speculation that a note might not be authentic and that assignments might have been mishandled does not necessarily justify — in a garden-variety foreclosure case — a need for further discovery[.]" *Pinti*, 37 F.4th at 727. Nor has Mr. Brown shown that he lacked a full and fair opportunity to pursue the discovery he now seeks; the docket reflects that discovery closed without a request to extend the Pretrial Scheduling Order (ECF No. 33) and that U.S. Bank produced responses to Mr. Brown's discovery requests, most recently in November 2025. *Compare Pinti*, 37 F.4th at 726–27 (deferral warranted only as to two discrete categories — note authenticity/chain of custody and a set of 2019 assignments — that did not exist, or were not discoverable, during a prior related action).

Accordingly, the Court declines to defer or deny summary judgment under Rule 56(d).[3]

C. MERS and Scope of Relief

Mr. Brown separately argues that summary judgment cannot enter because MERS — named as a defendant on account of a junior, second mortgage on the Property — was not properly served at the address where U.S. Bank's process server left the summons and Complaint. ECF No. 65-1 at 29-32. As MERS itself has never

[3] As explained above, the Magistrate Judge recently denied Defendant's Motion to Compel Complete and Verified Interrogatory Answers (ECF No. 70) and Motion for Sanctions (ECF No. 69), finding there, too, that Defendant did not demonstrate that any outstanding discovery was both unavailable to him through no fault of his own and capable of creating a genuine issue of material fact. ECF No. 76.

appeared, Mr. Brown, a co-defendant, has not shown that he may raise on MERS's behalf an alleged defect in service that is personal to MERS. *See Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 290 (1st Cir. 2013) (explaining while addressing a mortgagor's standing to challenge a mortgage assignment, that doing so "ordinarily require[s] a plaintiff to show that his claim is premised on his own legal rights (as opposed to those of a third party)" (internal citations omitted)).[4]

D. Admissibility of the Corral Affidavit

Before turning to the merits, the Court addresses Mr. Brown's threshold challenge to the admissibility of the affidavit of Elizabeth Corral (ECF No. 40-3), a Default Fulfillment Manager for Carrington Mortgage Services, LLC ("Carrington"), U.S. Bank's current servicer, submitted in support of summary judgment. Mr. Brown argues that because the loan passed through several prior servicers — New Century, Countrywide, Bank of America, Ocwen, Fay, and Rushmore/Nationstar, among others — before Carrington, Ms. Corral cannot competently authenticate records or events that predate Carrington's involvement, and that the affidavit therefore fails Rule 56(c)(4) of the Federal Rules of Civil Procedure and the business-records

[4] Nothing in this Memorandum or the accompanying judgment adjudicates, extinguishes, or otherwise binds MERS's recorded junior interest in the Property. Although foreclosure of the senior Mortgage discharges junior liens, "the interest of the junior lienholder is not eliminated"; rather, the junior lienholder retains an interest in the proceeds of the foreclosure sale and is entitled to any surplus to the extent of that interest, which is held as trust property for its benefit. *See New Haven Sav. Bank v. Follins*, 431 F. Supp. 2d 183, 196–97 (D. Mass. 2006). The parties have not cited Rhode Island authority squarely on this point. The Court therefore need not, and does not, resolve the parties' dispute over the adequacy of service on MERS to grant the relief Plaintiff seeks against Mr. Brown.

exception to hearsay, Rule 803(6) of the Federal Rules of Evidence. ECF No. 65-1 at 8-18.

A business record that incorporates a predecessor's data is not categorically inadmissible, nor is it categorically admissible on the strength of a current custodian's say-so; "the admissibility of the evidence turns on the facts of each case." *U.S. Bank Tr., N.A. v. Jones*, 925 F.3d 534, 537 (1st Cir. 2019) (citing *United States v. Savarese*, 686 F.3d 1, 12 (1st Cir. 2012)). The touchstone is reliability; records are properly admitted where they are "intimately integrated" into the successor's own records, or where the successor "relied on" the predecessor's data and "took measures to verify" its accuracy — for example, by describing a review or reconciliation process and by having a "self-interest in assuring the accuracy of the outside information." *Id.* at 538–39 (internal citations omitted). A qualified witness "need not be the person who actually prepared the record" but must be able to "explain and be cross-examined concerning the manner in which the records are made and kept." *Id.* at 538 (internal citations omitted). The First Circuit has been careful to note that this inquiry is fact-specific in every case and that servicer records "may not always carry the requisite indicia of reliability." *Id.* at 539.

Applying that standard, the Corral Affidavit states that Carrington's business records include records created by prior servicers; that, upon becoming servicer, Carrington reviewed those records "to identify any irregularities in the documentation or records received" and "to verify that all payments previously received were properly applied to the account"; and that, once verified, the records

were incorporated into Carrington's own business records "similar to the manner in which the records would have been created had Carrington serviced the loan from its inception." ECF No. 40-3 ¶¶ 2–3. That is precisely the verification showing this Court and the First Circuit have found sufficient. *See Jones*, 925 F.3d at 538–39; *Citibank, N.A. v. Caito*, No. CV 18-427-JJM-LDA, 2019 WL 6896309 *2 (D.R.I. Dec. 18, 2019), *aff'd,* No. 20-1100, 2022 WL 18276940 (1st Cir. Nov. 15, 2022) (crediting an affidavit describing the servicer's review of predecessor records and denying a motion to strike). And as in both *Jones* and *Caito*, Mr. Brown does not point to any actual discrepancy in the payment or transaction history — he does not claim, for instance, that a specific payment was misapplied or that a specific charge was duplicated — he argues only that the foundation for the history is inadequate in the abstract. *See Jones*, 925 F.3d at 538 (finding that the borrower "did not dispute the transaction history by claiming overbilling or unrecorded payments, as she surely could have done if the records were inaccurate") (internal quotation marks omitted).

The same analysis governs the Default Notice and the Acceleration Letter, which were mailed not by Carrington but by Fay and Harmon, respectively, years before Carrington became the servicer. ECF No. 40-3 ¶¶ 13, 15. This Court considered a materially identical situation in *Caito*, where the current servicer's affidavit incorporated a predecessor servicer's mailing of a default notice, supported by a postal marking on the notice itself; the Court held the affidavit admissible and rejected the borrower's argument that this amounted to "just the calculation of what she owes" dressed up as a hearsay objection. 2019 WL 6896309, at *1. So too here

the Default Notice bears indicia — a postage marking — supporting that it was mailed as represented, and Mr. Brown has offered no competent evidence, as opposed to speculation and argument, that it was not. *Cf. Lema v. Nationstar Mortg., LLC*, 603 F. Supp. 3d 17, 20–21 (D.R.I. 2022) (records of a mailing performed by a vendor or predecessor may be admitted where the current affiant has personal knowledge of the procedures used to confirm that the mailing occurred, particularly where corroborated by the opposing party's own admissions).

For these reasons, the Court overrules Mr. Brown's objection to the Corral Affidavit and considers it in evaluating the remainder of the motion.

### E. FORECLOSURE REQUIREMENTS

Rhode Island's judicial foreclosure statute permits "[a]ny person entitled to foreclose the equity of redemption in any mortgaged estate… [to] prefer a complaint to foreclose it, which complaint may be heard, tried, and determined according to the usages in chancery and the principles of equity." R.I. Gen. Laws § 34-27-1. "[U]pon initiation of judicial foreclosure proceedings, the court first determines whether the mortgagee is entitled to foreclose the mortgage[;] if foreclosure is appropriate, the court then oversees the conduct and process of the foreclosure sale." *Ocwen Loan Servicing, LLC v. Medina*, 247 A.3d 140, 141, 144 (R.I. 2021). Consistent with that framework, and with how this Court has approached judicial foreclosure motions for summary judgment on comparable records, the Court considers whether the undisputed facts establish that (1) U.S. Bank is the properly assigned mortgagee entitled to foreclose the Mortgage; (2) Mr. Brown defaulted on the Note and breached

the Mortgage; (3) U.S. Bank, through its servicers, issued a notice of default before commencing this action that strictly complied with Paragraph 22 of the Mortgage; and (4) the deadline U.S. Bank set to cure the default passed without Mr. Brown curing the default or reinstating the Mortgage. *See Caito*, 2019 WL 6896309, at *2–4 (applying the same four-part framework to a Rhode Island judicial foreclosure).

***1. U.S. Bank is Entitled to Foreclose the Mortgage***

Rhode Island is a title-theory state: a mortgage conveys legal title to the mortgagee, subject to defeasance upon payment of the debt, and "there are two operative documents to a real estate loan transaction" — the note and the mortgage — that need not travel together. *Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1077–78, 1081 (R.I. 2013). The Mortgage here grants MERS, as nominee for New Century "and Lender's successors and assigns," the statutory power of sale and "the right to foreclose and sell the Property." ECF No. 40-1 at ¶ 4. Such language is "clear and leave[s] no room for interpretation": the borrower grants MERS the contractual authority to exercise the power of sale and, by extension, to assign that authority to Lender's successors. *Bucci*, 68 A.3d at 1081.

Mr. Brown contends that MERS's 2011 assignment to Bank of America is void because New Century, the original lender, filed a notice rejecting its executory contract with MERS in bankruptcy in March 2008, terminating MERS's nominee authority before the assignment. ECF No. 65-1 at 3. A mortgagor has standing to raise this kind of challenge, but only "to the extent necessary to contest the foreclosing entity's authority to foreclose," and only where the challenged assignment is "invalid,

ineffective, or void" rather than merely voidable. *Mruk v. Mortg. Elec. Registration Sys., Inc.*, 82 A.3d 527, 536 (R.I. 2013).

Rhode Island's Supreme Court has confronted this precise theory in litigation involving New Century and MERS before. At the pleading stage, crediting the borrower's allegations as true, the theory was held sufficient to survive dismissal: if New Century's bankruptcy rejection in fact terminated MERS's authority before a subsequent assignment, that assignment would be "*void ab initio* because the assignor, MERS, had nothing to assign." *DiLibero v. Mortg. Elec. Registration Sys., Inc.*, 108 A.3d 1013, 1017 (R.I. 2015) ("*DiLibero I*"). But at summary judgment, on a fuller record, the same theory failed: the defendants there submitted affidavits showing that New Century had transferred the Note to Bank of America before the rejection, so that MERS's later assignment necessarily was made as nominee for the Note's new owner, not for New Century; the borrower "failed to submit competent evidence sufficient to raise a genuine issue of material fact" in response. *DiLibero v. Mortg. Elec. Registration Sys., Inc.*, 198 A.3d 1259, 1260–61 (R.I. 2019) ("*DiLibero II*").

This case is governed by *DiLibero II*, not *DiLibero I*, because the Court is deciding a summary-judgment record, not a motion to dismiss. Here, as in *DiLibero II*, the timing works against Mr. Brown's theory because the undisputed facts show that New Century endorsed the Note to Countrywide Bank, N.A. before March 12, 2007 — more than a year before New Century filed its notice of rejection on March 19, 2008. ECF No. 40-1 at ¶¶ 10, 13. Once the Note passed to Countrywide, and later to

Bank of America upon the 2009 merger, MERS's continuing nominee authority ran to Countrywide and Bank of America as New Century's successors — exactly the "successors and assigns" for whom the Mortgage authorized MERS to act, ECF No. 40-1 at ¶ 4 — not to New Century itself. Mr. Brown has not come forward with any competent evidence disputing this endorsement chain or its timing; rather, he disputes only that U.S. Bank has adequately authenticated it, which the Court has resolved, *supra*. Such an allegation is not enough. *See DiLibero II*, 198 A.3d at 1260–61; *Moura v. Mortg. Elec. Registration Sys., Inc.*, 90 A.3d 852, 858 (R.I. 2014) ("[m]ere allegations and conclusions will not create a factual dispute sufficient to defeat summary judgment") (citing *Mruk*, 82 A.3d at 532).

Mr. Brown separately challenges the authority of the individuals who executed the later assignments in the chain — from Bank of America to Christiana Trust, from Christiana Trust to Wilmington Trust, and from Wilmington Trust to U.S. Bank — each executed by a person identifying herself or himself as an attorney-in-fact for the assignor, acknowledged before a notary public. ECF No. 65-1 at 3-4, 35-36; ECF No. 40-1 at ¶¶ 16–17, 21. A notarized assignment executed by someone representing that she holds authority to sign on the assignor's behalf is presumptive evidence of that authority. *See Moura*, 90 A.3d at 855, 858 (crediting the trial court's finding that a notarized assignment signed by a purported officer was "presumptive evidence" of authority, unrebutted by competent evidence, and affirming summary judgment where the challenge to the signer's authority remained conclusory). Mr. Brown has not offered competent evidence — as distinct from argument — that any of these

signers lacked the authority they represented themselves to hold or that the underlying powers of attorney did not exist, were not in force, or did not cover this loan. Conclusory challenges of this kind do not defeat summary judgment. *See Moura*, 90 A.3d at 858.

Finally, to whatever extent Mr. Brown's remaining objections — concerning negotiation of the Note under R.I. Gen. Laws § 6A-3-201, holder status under § 6A-3-301, and the validity of the allonge under § 6A-3-204 (ECF No. 65-1 at 39) — are addressed to whether U.S. Bank holds the Note itself, they do not present a genuine issue material to U.S. Bank's authority to foreclose the Mortgage. "[A] mortgagee need not hold the note in order to foreclose on a property" in Rhode Island. *Medina*, 247 A.3d at 144–45 (citing *Bucci*, 68 A.3d 1069); *accord Porch Swing Holdings LLC v. Mallory*, 345 A.3d 404, 407–08 (R.I. 2025) (mortgagee retained authority to foreclose "even in the absence of its possession of the promissory note," and even where, unlike here, the Note's loss was undisputed, because "the mortgage and the note could be separated" as a matter of law). Because the Court has concluded that U.S. Bank holds the Mortgage through an unbroken and presumptively valid chain of assignment, Mr. Brown's disputes concerning the Note's endorsement history and custody do not defeat U.S. Bank's entitlement to foreclose.

Accordingly, the undisputed facts establish that U.S. Bank is the properly assigned holder of the Mortgage and is entitled to enforce the statutory power of sale and to foreclose.

### *2. Mr. Brown Defaulted on the Note and Breached the Mortgage*

It is undisputed that Mr. Brown has made no payment on the Note since October 1, 2015. ECF No. 40-1 at ¶ 18. Mr. Brown's response disputes only the adequacy of the foundation for that fact, not the fact of nonpayment itself. ECF No. 65-21 at 5–6. Having overruled Mr. Brown's foundation objection, the Court finds no genuine dispute that his failure to make these payments resulted in default on the Note and breach of the Mortgage. *See Caito*, 2019 WL 6896309, at *3 ("[t]here is no dispute that [the borrower] has made no payments on her Mortgage since [the default date]. Her failure to make these payments resulted in default on the Note and breach of the Mortgage.").

### *3. U.S. Bank Strictly Complied with Paragraph 22 of the Mortgage*

Paragraph 22 of the Mortgage requires the lender, before accelerating the debt and invoking the statutory power of sale, to give the borrower notice specifying (a) the default; (b) the action required to cure it; (c) a date, not less than thirty days from the notice, by which the default must be cured; and (d) that failure to cure by that date may result in acceleration and sale of the property; the notice must also advise the borrower of the right to reinstate after acceleration and to bring a court action asserting a defense. ECF No. 40-1 at ¶ 9. As a matter of Rhode Island contract law, strict compliance with these requirements is a condition precedent to a valid foreclosure. *Woel v. Christiana Tr.*, 228 A.3d 339, 345 (R.I. 2020); *e.g.*, *Caito*, 2019 WL 6896309, at *3.

A notice satisfies these requirements where it identifies all four elements the Rhode Island Supreme Court has distilled from Paragraph 22 (or its equivalent, sometimes numbered Paragraph 17): the breach, the cure required, the cure date, and the consequence of non-cure. *Degasparre v. Fay Servicing, LLC*, 288 A.3d 146, 154–55 (R.I. 2023). The Default Notice here identifies the breach ("failure to pay amounts due"); the cure required ("pay the full amount of the default"); a cure date more than thirty days out (May 22, 2017, thirty-five days after the April 17, 2017 notice); and warns that failure to cure may result in acceleration and "foreclosure by judicial proceeding where applicable, and sale of the property." ECF No. 40-1 at ¶ 20. It further advises Mr. Brown of his right to reinstate after acceleration and to bring a court action asserting a defense. *Id.* That the notice refers to "foreclosure by judicial proceeding" rather than tracking the Mortgage's "STATUTORY POWER OF SALE" language verbatim does not defeat strict compliance; the Rhode Island Supreme Court has held that minor variations in terminology do not render a notice noncompliant where, as here, there is no indication the variation misinformed or misled the borrower as to his rights. *Degasparre*, 288 A.3d at 154.

Mr. Brown separately argues that the Default Notice's inclusion of a $1,339.51 corporate advance in the stated cure amount defeats strict compliance because U.S. Bank has not itemized or proven the advance was properly incurred. ECF No. 65-1 at 43. Paragraph 22 requires only that the notice specify the default and the action required to cure it; it does not require the lender to litigate, in the notice itself or at summary judgment, the ultimate propriety of every dollar included in a cure figure.

*See U.S. Bank National Ass'n v. Torres*, 559 F. Supp. 3d 62, 66–67 (D.R.I. 2021) (additional amounts that might be owed for reinstatement do not diminish or contradict that the default amount was specified). Nor does Paragraph 22 require the notice to re-advise Mr. Brown of his separate right to reinstate under Paragraph 19 on specific terms, or otherwise account for the conditions of reinstatement; that is a matter for Paragraph 19, and "neither paragraph 22 nor" *Woel* "requires that the borrower be re-advised of that right in the notice of default." *Serenska v. Wells Fargo Bank, N.A.*, 307 A.3d 1275, 1281–82 (R.I. 2024). Prejudice to the borrower, in any event, "is not a factor to be weighed" in determining whether a notice of default strictly complies with the mortgage. *Id.* at 1282, 1285.

Mr. Brown also challenges the June 30, 2017 Harmon acceleration letter — principally on the ground that Fay and Harmon, not U.S. Bank or Carrington directly, mailed the Default Notice and the Acceleration Letter, respectively, and that U.S. Bank has not adequately proven either mailing or Harmon's authority to accelerate on U.S. Bank's behalf. ECF No. 65-1 at 22-24. As to Harmon's letter specifically, Paragraph 22 is directed at the notice of default; it does not separately require the lender to reiterate the borrower's rights in a later, subsequent notice of acceleration, which is not itself subject to Paragraph 22's strict compliance standard. *Diaz v. Select Portfolio Servicing*, 355 A.3d 1044 (R.I. 2026). As to mailing generally, the Court has found the Corral Affidavit's foundation for both mailings sufficient, supra, and Mr. Brown has come forward with no competent evidence, only argument, that either notice was not sent as represented.

Accordingly, the undisputed facts establish that U.S. Bank strictly complied with Paragraph 22 of the Mortgage before commencing this action.

***4. The Cure Deadline Passed Without Cure or Reinstatement***

The Default Notice set May 22, 2017 as the deadline to cure. ECF No. 40-1 at ¶ 20. It is undisputed that Mr. Brown did not cure the default or take any steps to reinstate the Mortgage by that date, or at any point since. *Id.* at ¶ 24; *see Caito*, 2019 WL 6896309, at *4 ("[t]he deadline that [plaintiff] set to cure the default in its notice [. . .] passed without [defendant] making any attempt to get the Mortgage reinstated.").

## IV. CONCLUSION

For all these reasons, the Court finds the following undisputed: (1) U.S. Bank is the holder of the Mortgage and is entitled to foreclose it; (2) Mr. Brown defaulted on the Note and breached the Mortgage by failing to make any payment since October 1, 2015; (3) U.S. Bank, through its servicers, issued a notice of default before commencing this action that strictly complied with Paragraph 22 of the Mortgage; and (4) the deadline U.S. Bank set to cure the default — May 22, 2017 — passed without Mr. Brown curing the default or reinstating the Mortgage. Mr. Brown's remaining affirmative defenses (ECF No. 65-21 ¶¶ 36, 41, 47) do not raise a genuine issue of material fact.[5]

[5] Defendant's Truth-in-Lending Act (15 U.S.C. § 1601 et seq.) and Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) defenses rest on conclusory assertions unsupported by any evidence that periodic statements were not sent to Defendant's address of record or that Plaintiff's counsel lacked a basis to file the Complaint, and Defendant has not identified any concrete injury flowing from either

U.S. Bank's Motion for Summary Judgment (ECF No. 40) is GRANTED. Defendant's Motion to Strike or Disregard New Evidence and Factual Theories Submitted in Reply, or, Alternatively, for Leave to File a Sur-Reply, Limited Discovery, and Relief Under Rule 56(d) (ECF No. 71) is DENIED in its entirety. The temporary restraining order entered February 13, 2024 is VACATED.

IT IS SO ORDERED.

***//s// John J. McConnell, Jr.***

John J. McConnell, Jr.
Chief United States District Judge

September 15, 2026

alleged violation. Rule 7.1 does not require joinder of the Rhode Island Division of Taxation or the Town of West Greenwich, neither of which has a recorded interest in the Property; their omission does not bear on Plaintiff's entitlement to foreclose the Mortgage as against Defendant and MERS.